## GOLDEN STATE TRANSIT CORP. *v.* CITY OF LOS ANGELES

No. 88–840.   Argued October 3, 1989—Decided December 5, 1989

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, and SCALIA, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR, J., joined, *post*, p. 113.

*Zachary D. Fasman* argued the cause and filed briefs for petitioner.

*John F. Haggerty* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

In *Golden State Transit Corp.* v. *Los Angeles,* 475 U. S. 608 (1986) *(Golden State I),* we held that the respondent city had violated federal law by conditioning the renewal of petitioner's taxicab franchise on settlement of a pending labor dispute between petitioner and its union. On remand, the District Court enjoined the city to reinstate the franchise but concluded that 42 U. S. C. § 1983 (1982 ed.)[1] did not authorize an award of compensatory damages. The court reasoned that "the supremacy clause does not create individual rights that may be vindicated in an action for damages under

---

*Kenneth S. Geller, Andrew J. Pincus, Stuart E. Abrams, Daniel R. Barney, Robert Digges, Jr., Laurie T. Baulig,* and *William S. Busker* filed a brief for the American Trucking Associations, Inc., as *amicus curiae* urging reversal.

*Benna Ruth Solomon* and *Charles Rothfeld* filed a brief for the National League of Cities et al. as *amici curiae.*

[1] Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1983," 660 F. Supp. 571, 578 (CD Cal. 1987), and that even though the city's conduct was pre-empted by the National Labor Relations Act (NLRA), 49 Stat. 449, as amended, 29 U. S. C. § 151 *et seq.* (1982 ed. and Supp. V), a § 1983 cause of action did not lie because there had been no "direct violation" of the statute and because the Act's comprehensive enforcement scheme precluded resort to § 1983.[2] The Court of Appeals affirmed. 857 F. 2d 631 (CA9 1988). We granted certiorari limited to the question whether the NLRA granted petitioner rights enforceable under § 1983. 489 U. S. 1010 (1989).

I

Section 1983 provides a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." As the language of the statute plainly indicates, the remedy encompasses violations of federal statutory as well as constitutional rights. We have repeatedly held that the coverage of the statute must be broadly construed. See, *e. g.*, *Felder* v. *Casey*, 487 U. S. 131, 139 (1988); *Maine* v. *Thiboutot*, 448 U. S. 1, 4 (1980);

---

[2] "As the City correctly notes, it did not, and could not, violate the NLRA, or Section 8(d) specifically, since it was not a party to the collective bargaining agreement between Golden State and its Teamster drivers but rather was merely a collateral third party to the collective bargaining process. Section 8(d) of the NLRA does not create rights and obligations with respect to third parties who are not parties to a collective bargaining agreement but who, in some way, come in contact with the collective bargaining process. Rather, Section 8(d) defines the concept of collective bargaining and the obligations of the parties engaged in collective bargaining, and, in the language at issue in this case, states that the failure to make a concession during collective bargaining negotiations is not an unfair labor practice. Thus, while the Supreme Court in this case relied on Section 8(d) in holding that the City's action was preempted because it would have the effect of forcing a bargaining concession by Golden State, it would strain the language and purpose of the NLRA and misconstrue the import of the Supreme Court opinion to find that the City 'directly violated' Section 8(d) solely by virtue of the fact that it took some action preempted by that section." 660 F. Supp., at 578–579.

cf. *United States* v. *Price,* 383 U. S. 787, 801 (1966). It provides a remedy "against all forms of official violation of federally protected rights." *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 700–701 (1978).

A determination that § 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry. First, the plaintiff must assert the violation of a federal right. See *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.,* 453 U. S. 1, 19 (1981). Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law. In deciding whether a federal right has been violated, we have considered whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." *Pennhurst State School and Hospital* v. *Halderman,* 451 U. S. 1, 19 (1981). The interest the plaintiff asserts must not be "too vague and amorphous" to be "beyond the competence of the judiciary to enforce." *Wright* v. *Roanoke Redevelopment and Housing Authority,* 479 U. S. 418, 431–432 (1987). We have also asked whether the provision in question was "intend[ed] to benefit" the putative plaintiff. *Id.,* at 430; see also *id.,* at 433 (O'CONNOR, J., dissenting) (citing *Cort* v. *Ash,* 422 U. S. 66, 78 (1975)).

Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress "specifically foreclosed a remedy under § 1983," *Smith* v. *Robinson,* 468 U. S. 992, 1005, n. 9 (1984), by providing a "comprehensive enforcement mechanis[m] for protection of a federal right," *id.,* at 1003; see also *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.,* 453 U. S. 1 (1981); *Preiser* v. *Rodriguez,* 411 U. S. 475 (1973). The availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy. See *Wright,* 479 U. S., at 425–428; cf. *Rosado* v. *Wyman,* 397 U. S. 397, 420 (1970).

Rather, the statutory framework must be such that "[a]llowing a plaintiff" to bring a § 1983 action "would be inconsistent with Congress' carefully tailored scheme." *Smith*, 468 U. S., at 1012. The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant. See *Wright*, 479 U. S., at 423; *National Sea Clammers*, 453 U. S., at 21, n. 31. "'We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Wright*, 479 U. S., at 423–424 (quoting *Smith* v. *Robinson*, 468 U. S., at 1012).

Respondent argues that the Supremacy Clause,[3] of its own force, does not create rights enforceable under § 1983. We agree. "[T]hat clause is not a source of any federal rights"; it "'secure[s]' federal rights by according them priority whenever they come in conflict with state law." *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, 613 (1979); see also *Swift & Co.* v. *Wickham*, 382 U. S. 111 (1965).[4] Given the variety of situations in which pre-

---

[3] Article VI, cl. 2, of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

[4] *Chapman* involved the predecessor to 28 U. S. C. § 1343(a)(3) (1982 ed)., the jurisdictional counterpart to § 1983, which provides jurisdiction over civil actions "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." We observed that if the first prepositional phrase, referring to constitutional claims, included rights secured solely by the Supremacy Clause, the additional language, providing jurisdiction for claims based on Acts of Congress providing for equal rights of citizens, would have been superfluous. See *Chapman*, 441 U. S., at 615. In order to give meaning to the entire statute, we held that the reference to constitutional claims therefore did not include rights secured

emption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority. Conversely, the fact that a federal statute has pre-empted certain state action does not preclude the possibility that the same federal statute may create a federal right for which § 1983 provides a remedy.

In all cases, the availability of the § 1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations "sufficiently specific and definite" to be within "the competence of the judiciary to enforce," *Wright*, 479 U. S., at 432, is intended to benefit the putative plaintiff, and is not foreclosed "by express provision or other specific evidence from the statute itself," *id.*, at 423.

## II

The nub of the controversy between the parties is whether the NLRA creates "rights" in labor and management that are protected against governmental interference. The city does not argue, nor could it, that a § 1983 action is precluded by the existence of a comprehensive enforcement scheme. Although the National Labor Relations Board (NLRB or Board) has exclusive jurisdiction to prevent and remedy unfair labor practices by employers and unions, it has no authority to address conduct protected by the NLRA against governmental interference.[5] There is thus no comprehen-

---

solely by the Supremacy Clause. *Ibid.* The same is true with respect to § 1983. If the Supremacy Clause itself were understood to secure constitutional rights, the reference to "and laws" would have been wholly unnecessary. It follows that a Supremacy Clause claim based on a statutory violation is enforceable under § 1983 only when the statute creates "rights, privileges, or immunities" in the particular plaintiff.

[5] The Court of Appeals was thus mistaken in ruling that because the NLRB has exclusive jurisdiction to redress violations of the NLRA by labor and management, the federal courts do not have jurisdiction to address claims of governmental interference with interests protected by

sive enforcement scheme for preventing state interference with federally protected labor rights that would foreclose the § 1983 remedy. Nor can there be any substantial question that our holding in *Golden State I* that the city's conduct was pre-empted was within the competence of the judiciary to enforce. Rather, the city argues that it cannot be held liable under § 1983 because its conduct did not violate any rights secured by the NLRA. On the basis of our previous cases, we reject this argument. We agree with petitioner that it is the intended beneficiary of a statutory scheme that prevents governmental interference with the collective-bargaining process and that the NLRA gives it rights enforceable against governmental interference in an action under § 1983.

In the NLRA, Congress has not just "occupied the field" with legislation that is passed solely with the interests of the general public in mind. In such circumstances, when congressional pre-emption benefits particular parties only as an incident of the federal scheme of regulation, a private damages remedy under § 1983 may not be available. The NLRA, however, creates rights in labor and management both against one another and against the State.[6] By its terms, the Act confers certain rights "generally on employees and not merely as against the employer." *Hill* v. *Florida ex rel. Watson*, 325 U. S. 538, 545 (1945) (Stone, J., concurring in part and dissenting in part); see also *Motor Coach Employees* v. *Missouri*, 374 U. S. 74 (1963); *Motor Coach Employees* v. *Wisconsin Employment Relations Bd.*, 340

---

the Act. Our cases have repeatedly stressed the distinctions between the two types of claims, see *Brown* v. *Hotel Employees*, 468 U. S. 491, 503 (1984); *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U. S. 132, 145, n. 6 (1976); *Trainmen* v. *Jacksonville Terminal Co.*, 394 U. S. 369, 382, n. 17 (1969).

[6] Section 1(b) of the Taft-Hartley Act, 29 U. S. C. § 141(b) (1982 ed.), states in pertinent part:

"It is the purpose and policy of this chapter . . . to prescribe the legitimate rights of both employees and employers in their relations affecting commerce . . . ."

U. S. 383 (1951); *Automobile Workers* v. *O'Brien*, 339 U. S. 454, 458 (1950). We have thus stated that "[i]f the state law regulates conduct that is actually protected by federal law, . . . pre-emption follows . . . as a matter of substantive right." *Brown* v. *Hotel Employees*, 468 U. S. 491, 503 (1984). The rights protected against state interference, moreover, are not limited to those explicitly set forth in § 7 as protected against private interference. "The NLRA . . . has long been understood to protect a range of conduct against state but not private interference." *Wisconsin Dept. of Industry* v. *Gould Inc.*, 475 U. S. 282, 290 (1986). See also *New York Telephone Co.* v. *New York Dept. of Labor*, 440 U. S. 519, 552 (1979) (Powell, J., dissenting) ("What Congress left unregulated is as important as the regulations that it imposed. It sought to leave labor and management essentially free to bargain for an agreement to govern their relationship"). And, contrary to the city's contention, "'[r]esort to economic weapons should more peaceful measures not avail' is the right of the employer as well as the employee." *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U. S. 132, 147 (1976) (quoting *American Ship Building Co.* v. *NLRB*, 380 U. S. 300, 317 (1965)).

*Golden State I* was based on the doctrine that is identified with our decision in *Machinists* v. *Wisconsin Employment Relations Comm'n, supra.* That doctrine is fundamentally different from the rule of *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236 (1959), that state jurisdiction over conduct arguably protected or prohibited by the NLRA is pre-empted in the interest of maintaining uniformity in the administration of the federal regulatory jurisdiction. See *Trainmen* v. *Jacksonville Terminal Co.*, 394 U. S. 369, 382, n. 17 (1969).[7] In *Machinists*, we reit-

---

[7] *Garmon* pre-emption divests a state court of jurisdiction over actions where the state law prohibits the same conduct that is arguably prohibited by the NLRA, see *Sears, Roebuck & Co.* v. *Carpenters*, 436 U. S. 180, 193–198 (1978); *Belknap, Inc.* v. *Hale*, 463 U. S. 491, 510 (1983), and

erated that Congress intended to give parties to a collective-bargaining agreement the right to make use of "economic weapons," not explicitly set forth in the Act, free of governmental interference. 427 U. S., at 150. "[T]he congressional intent in enacting the comprehensive federal law of labor relations" required that certain types of peaceful conduct "must be free of regulation." *Id.*, at 155. The *Machinists* rule creates a free zone from which all regulation, "whether federal or State," *id.*, at 153, is excluded.[8]

The city's contrary argument, that the NLRA does not secure rights against the State because the duties of the State are not expressly set forth in the text of the statute, is not persuasive. We have held, based on the language, structure, and history of the NLRA, that the Act protects certain rights of labor and management against governmental interference. While it is true that the rule of the *Machinists* case is not set forth in the specific text of an enumerated section of

---

actions involving conduct arguably protected under the NLRA provided the injured party has a means of bringing the dispute before the Board, see *Longshoremen* v. *Davis*, 476 U. S. 380, 393, n. 10 (1986). This preemption rule "avoids the potential for jurisdictional conflict between state courts or agencies and the NLRB by ensuring that primary responsibility for interpreting and applying this body of labor law remains with the NLRB." *Brown* v. *Hotel Employees*, 468 U. S., at 502. "Apart from notions of 'primary jurisdiction,' there would be no objection to state courts' and the NLRB's exercising concurrent jurisdiction over conduct prohibited by the federal Act." *Sears, Roebuck*, 436 U. S., at 199 (footnote omitted).

[8] Referring to the substantive aspects of the collective-bargaining process, we wrote:

"Our decisions hold that Congress meant that these activities, whether of employer or employees, were not to be regulable by States any more than by the NLRB, for neither States nor the Board is 'afforded flexibility in picking and choosing which economic devices of labor and management shall be branded as unlawful.' [*NLRB* v. *Insurance Agents*, 361 U. S. 477, 498 (1960).] Rather, both are without authority to attempt to 'introduce some standard of properly "balanced" bargaining power,' *id.*, at 497 (footnote omitted), or to define 'what economic sanctions might be permitted negotiating parties in an "ideal" or "balanced" state of collective bargaining.' *Id.*, at 500." *Machinists*, 427 U. S., at 149–150.

the NLRA, that might well also be said with respect to any number of rights or obligations that we have found implicit in a statute's language. A rule of law that is the product of judicial interpretation of a vague, ambiguous, or incomplete statutory provision is no less binding than a rule that is based on the plain meaning of a statute. The violation of a federal right that has been found to be implicit in a statute's language and structure is as much a "direct violation" of a right as is the violation of a right that is clearly set forth in the text of the statute.

The *Machinists* rule is not designed—as is the *Garmon* rule—to answer the question whether state or federal regulations should apply to certain conduct. Rather, it is more akin to a rule that denies either sovereign the authority to abridge a personal liberty. As much as the welfare benefits in *Maine* v. *Thiboutot*, 448 U. S. 1 (1980), and the right to a prescribed portion of rent in *Wright* v. *Roanoke Redevelopment and Housing Authority*, 479 U. S. 418 (1987), the interest in being free of governmental regulation of the "peaceful methods of putting economic pressure upon one another," *Machinists*, 427 U. S., at 154, is a right specifically conferred on employers and employees by the NLRA.[9] Of course, Congress has the authority to retract the statutorily conferred liberty at will, just as the State in *Wright* and *Thiboutot* could relieve itself of federal obligations by declining federal funds. Cf. *Guardians Assn.* v. *Civil Service Comm'n of New York City*, 463 U. S. 582, 596 (1983) (opinion of WHITE, J.); *Rosado* v. *Wyman*, 397 U. S., at 420. But while the rule remains in effect, it is a guarantee of freedom for private conduct that the State may not abridge.

As we held in *Golden State I*, respondent's refusal to renew petitioner's franchise violated petitioner's right to use permissible economic tactics to withstand the strike. Because

---

[9] Cf. *Bomar* v. *Keyes*, 162 F. 2d 136 (CA2) (L. Hand, J.) (statutory privilege to sit on federal jury protected against interference by State), cert. denied, 332 U. S. 825 (1947).

the case does not come within any recognized exception from the broad remedial scope of § 1983, we reverse the judgment of the Court of Appeals. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

The majority concludes that 42 U. S. C. § 1983 (1982 ed.) requires the city of Los Angeles to pay compensatory damages to Golden State Transit Corp. for violating the company's right under the National Labor Relations Act (NLRA), 29 U. S. C. § 151 *et seq.* (1982 ed. and Supp. V), to employ economic weapons in collective bargaining without state interference. With all respect, I dissent. Although I agree with much of the majority's discussion of both § 1983 and the NLRA, I do not consider these statutes to provide Golden State a remedy.

Our decision in *Golden State Transit Corp.* v. *Los Angeles*, 475 U. S. 608 (1986) *(Golden State I)*, held that the city had no power to condition the renewal of Golden State's operating franchise upon the settlement of the company's labor dispute because imposing such a condition would interfere with the NLRA. Although the city's lack of power in a sense immunized Golden State from interference by the city, in my view the NLRA did not secure this immunity within the meaning of § 1983. The District Court, however, had jurisdiction to enjoin the city's pre-empted action under other federal statutes.

I

From the earliest cases interpreting our constitutional law to the most recent ones, we have acknowledged that a private party can assert an immunity from state or local regulation on the ground that the Constitution or a federal statute, or both, allocate the power to enact the regulation to the National Government, to the exclusion of the States. A litigant

has standing to contend that proper allocation of power requires a particular outcome in a dispute, and this is so whether the dispute is between individual parties, see *Gibbons* v. *Ogden,* 9 Wheat. 1 (1824); *Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet. 245 (1829); *Hauenstein* v. *Lynham,* 100 U. S. 483 (1880), or the dispute involves a State or its subdivisions, see *Cooley* v. *Board of Wardens of Port of Philadelphia,* 12 How. 299 (1852); *City of Burbank* v. *Lockheed Air Terminal, Inc.,* 411 U. S. 624 (1973); *Ray* v. *Atlantic Richfield Co.,* 435 U. S. 151 (1978). The injured party does not need § 1983 to vest in him a right to assert that an attempted exercise of jurisdiction or control violates the proper distribution of powers within the federal system.

I submit that the Court should not interpret § 1983 to give a cause of action for damages when the only wrong committed by the State or its local entities is misapprehending the precise location of the boundaries between state and federal power. The dispute over the taxicab franchise involves no greater transgression than this. The NLRA, through preemption, did create a legal interest in Golden State, an interest which the city infringed, but it does not follow that Golden State may obtain relief under § 1983.

## II

The NLRA creates two relations which encompass different legal interests. The statute creates the first relation between Golden State and the striking union. The statute establishes duties that Golden State and the union have to each other and, as correlatives of these duties, rights that they have against each other. Under the NLRA, for example, each has a duty to bargain in good faith and, as correlatives of these duties, each has a right to have the other bargain in good faith. See 29 U. S. C. § 158(d) (1982 ed.). The Court of Appeals was correct to determine that the allegations of injury in this case do not implicate the rights and duties

which flow from this first legal relation. See 857 F. 2d 631, 635 (CA9 1988).

The NLRA also creates a jural relation between the city and Golden State. Although the NLRA does not provide in any detailed way how a city should act when renewing an operating franchise, the statute does have a pre-emptive effect under the Supremacy Clause. When we analyzed this pre-emption in *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U. S. 132 (1976), we ruled that, although the NLRB affords the States the power to regulate activities within its peripheral concern, *id.*, at 137, the States have no such power or authority to influence the substantive terms of collective-bargaining agreements, *id.*, at 147–151. Applying *Machinists* in *Golden State I*, we held that the city has no power to interfere with the NLRA by conditioning Golden State's franchise renewal upon settlement of a labor dispute. See 475 U. S., at 618.

The city's lack of power gives rise to a correlative legal interest in Golden State that we did not discuss in *Golden State I*. The majority has chosen to call the interest a right. See *ante*, at 112. I would prefer to follow the familiar Hohfeldian terminology and say that Golden State has an immunity from the city's interference with the NLRA. See Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning, 23 Yale L. J. 16, 55–58 (1913) (defining the correlative of no power as an immunity). This terminology best reflects Congress' intent to create the free zone of bargaining we described in *Machinists*. See 427 U. S., at 153.

### III

Section 1983 provides a federal remedy only for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The case before us today asks how § 1983 applies to claims of pre-emption. We have not answered this question in other decisions, but we have ruled that "an allegation of incompatibility between federal and

state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of [28 U. S. C.] § 1343" or, as the majority agrees, within the meaning of § 1983. *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, 615 (1979) (discussing 28 U. S. C. § 1343(3) (1976 ed.), the jurisdictional counterpart to § 1983). The pre-emptive federal statute, instead, must secure a right, privilege, or immunity in order for § 1983 to provide a remedy.   441 U. S., at 615.

The preceding analysis shows that Golden State has an immunity that arose out of a relation created by the NLRA. Unlike the majority, however, I do not think that the NLRA secures this immunity as contemplated by *Chapman.*   Section 1983 uses the word "secure" to mean "protect" or "make certain," *Hague* v. *Committee for Industrial Organization*, 307 U. S. 496, 526–527 (1939) (opinion of Stone, J.), in the sense of securing to "any person, any individual rights," *Carter* v. *Greenhow*, 114 U. S. 317, 322 (1885).   The section thus distinguishes secured rights, privileges, and immunities from those interests merely resulting from the allocation of power between the State and Federal Governments.   Representative Shellabarger, who sponsored the bill that became § 1983, see Cong. Globe, 42d Cong., 1st Sess., 317 (1871), recognized and explained the distinction as follows:

> "Most of the provisions of the Constitution, which restrain and directly relate to the States, such as those in the tenth section of first article, that 'no State shall make a treaty,' 'grant letters of marque,' 'coin money,' 'emit bills of credit,' &c., relate to the divisions of the political powers of the States and General Governments.   They do not relate directly to the rights of persons within the States and as between the States and such persons therein.   These prohibitions upon the political powers of the States are all of such nature that they can be, and even have been, when the occasion arose, enforced by the courts of the United States declaring void all State

acts of encroachment on Federal powers. Thus, and thus sufficiently, has the United States 'enforced' those provisions of the Constitution. But there are some that are not of this class. These are where the court secures the rights or the liabilities of persons within the States, as between such persons and the States." *Id.*, at App. 69.

Representative Shellabarger spoke only of interests secured by the Constitution. Our cases in recent years have expanded the scope of § 1983 beyond that contemplated by the sponsor of the statute and have identified interests secured by various statutory provisions as well. See, *e. g.*, *Wright* v. *Roanoke Redevelopment and Housing Authority*, 479 U. S. 418, 431–432 (1987) (right to particular calculation of rent in public housing secured by the Brooke Amendment to the United States Housing Act of 1937, 42 U. S. C. § 1437a (1982 ed. and Supp. V)); *Maine* v. *Thiboutot*, 448 U. S. 1, 2–3 (1980) (right to benefits secured by the Social Security Act, 42 U. S. C. § 602(a)(7) (1976 ed.)). None of these secured statutory interests, however, has been the sole result of a statute's pre-emptive effect, as has Golden State's immunity from the city's interference.

Pre-emption concerns the federal structure of the Nation rather than the securing of rights, privileges, and immunities to individuals. Although the majority finds the *Machinists* pre-emption doctrine "akin to a rule that denies either sovereign the authority to abridge a personal liberty," *ante*, at 112, and describes the interest of being free of governmental regulation as a right specifically conferred by the NLRA on employers and employees, *ibid.*, I cannot agree that federal law secures this legal interest within the meaning of § 1983.

Golden State does not and cannot contend that a federal statute protects it from the city's primary conduct apart from its governmental character. *Machinists'* pre-emption, as noted above, rests upon the allocation of power rather than

upon individual rights, privileges, or immunities. See *Machinists*, 427 U. S., at 137, 147–151. The dispute between Golden State and the city exists because the Federal Government has exercised its power under the Commerce Clause to regulate Golden State's labor relations under the NLRA and thus has deprived the city of the power to effect its own regulations of these relations. Although our recent decisions in *Wright* and *Thiboutot* suggest that Congress could secure individual interests in Golden State through a statute, Congress did not secure them in the NLRA.

Golden State's immunity, as defined in *Machnists*, has nothing to do with the substance of the requirement imposed on its collective bargaining. The immunity, for instance, would not prevent the United States from exercising its power under the Commerce Clause to authorize the actions taken by the city. The immunity, rather, permits the company to object only that the wrong sovereign has attempted to regulate its labor relations. Golden State's immunity does not benefit the company as an individual, but instead results from the Supremacy Clause's separate protection of the federal structure and from the division of power in the constitutional system. Federal law, as such, does not secure this immunity to Golden State within the meaning of § 1983.

The case before us differs from one in which the governmental character of the action itself constitutes only an element in the primary wrong that the injured party seeks to vindicate under the Constitution. See, *e. g.*, *Monroe* v. *Pape*, 365 U. S. 167 (1961). So too is this case unlike statutory cases such as *Maine* v. *Thiboutot*. The plaintiffs in *Thiboutot* sued state officials under § 1983 for withholding welfare benefits in violation of the Social Security Act, in particular, 42 U. S. C. § 602(a)(7) (1976 ed.). They claimed, in so many words, that the Social Security Act imposed upon the defendants a duty to the plaintiffs to pay the benefits and, as correlative of this duty, gave the plaintiffs a right against the defendants to have benefits paid. 448 U. S., at 2–3.

The Court's expansive interpretation of § 1983 allowed the plaintiffs to recover damages for the deprivation of this statutory right. *Id.*, at 4. The *Thiboutot* case, however, provides no help to Golden State. The NLRA affords Golden State no counterpart to the plaintiffs' individual interests in the Social Security benefits.

## IV

By concluding that Golden State may not obtain relief under § 1983, we would not leave the company without a remedy. Despite what one might think from the increase of litigation under the statute in recent years, § 1983 does not provide the exclusive relief that the federal courts have to offer. When we held in *Golden State I* that the company could survive summary judgment on a *Machinists* doctrine pre-emption claim, we did not purport to make a ruling with respect to § 1983 and did not even cite the provision. Our omission of any discussion of § 1983 perhaps stemmed from a recognition that plaintiffs may vindicate *Machinists* pre-emption claims by seeking declaratory and equitable relief in the federal district courts through their powers under federal jurisdictional statutes. See 28 U. S. C. § 1331 (1982 ed.); 28 U. S. C. § 2201; 28 U. S. C. § 2202 (1982 ed.); *New York Telephone Co.* v. *New York Dept. of Labor,* 440 U. S. 519, 525 (1979) (plaintiff sought declaratory and injunctive relief on a *Machinists* pre-emption claim). These statutes do not limit jurisdiction to those who can show the deprivation of a right, privilege, or immunity secured by federal law within the meaning of § 1983. Because Golden State asked for such relief in its complaint, see App. 6, 7, 17, the District Court had jurisdiction to enter the injunction on behalf of the company, but not for the reasons that it stated. As it is my view that Golden State does not have a claim under § 1983, I dissent.