Randy WOOD et al., Plaintiffs,

v.

Terry A. WALLACE, Defendant.

No. C–1–92–654.

United States District Court,
S.D. Ohio, W.D.

March 30, 1993.

Robert Joseph Gehring, Robert J. Gehring Co., LPA, Cincinnati, OH, for plaintiff Randy Wood.

Brian Edward Hurley, Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, OH, for plaintiff Diane Wood.

Alan Paul Schwepe, Ohio Atty. Gen., Columbus, OH, for defendant Terry A. Wallace.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANTS'
MOTION TO DISMISS AND IN THE
ALTERNATIVE FOR SUMMARY
JUDGMENT AND GRANTING DE-
FENDANTS' MOTION TO CERTIFY
FOR INTERLOCUTORY APPEAL

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' Motion to Dismiss and in the Alternative for Summary Judgement (doc. 15), the Plaintiffs' Memoranda in Opposition (doc.'s 5 & 17), and the Defendants' Motion to Certify for Interlocutory Appeal (doc. 16).

Due to the complexity of the legislation at the heart of this matter, a hearing was held on March 17, 1993 at which the parties were provided an opportunity to argue the merits of their claims.

## BACKGROUND

This case involves the Medicaid Act's ("The Act") Medically Fragile Home and Community Based Waiver Program ("The Waiver Program").[1] 42 U.S.C. §§ 1396 *et seq.*, 1396n(c). Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to the states so that they may furnish medical care to needy individuals. Although participation is voluntary, participating states must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services ("The Secretary").

The Waiver Program was designed to provide home and community based medical and support services for medically fragile and or severely handicapped children in lieu of hospitalization or other institutionalization. The Plaintiffs, Randy and Diane Wood, have brought this action individually, on behalf of their three year old son Evan, and on behalf of all similarly situated parents and children in the State of Ohio. The Plaintiffs claim that the state has deprived them of their rights under the Act in violation of 42 U.S.C. § 1983, by failing to provide the services required under The Waiver Program.

The Plaintiffs claim, among other things, that the state has failed to reasonably estimate the per capita costs of institutionalization as required by section 1396n(c)(2)(D) of the Act. This, according to the Plaintiffs, resulted in an unjustifiable reduction in the number of hours of community and home based care the state was willing to provide under The Waiver Program. This, the Plaintiffs maintain, has deprived them of their rights under the Act to community and home based care based on reasonable per capita estimates, and is actionable under section 1983.

1. The Medically Fragile Home and Community Based Waiver Program was previously titled the Waiver V Program.

The Defendants maintain that under the test enunciated in *Suter v. Artist M.*, —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) the Waiver Program does not create rights actionable under section 1983. Rather, the requirements placed on the states under the Act are simple manifestations of congressional preference for a certain kind of conduct, as opposed to a binding obligation. The Act's Waiver Program provisions, the argument goes, lack the specificity and clarity required to create an enforceable right under section 1983.

Despite the Defendants' persuasive and thorough analysis of the relevant case law, for the reasons discussed below, we find that consistent with the holdings and reasoning of *Suter* and *Wilder v. Hospital Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Waiver Program provisions of the Act do create rights actionable under section 1983.

## DISCUSSION

### I

■ This case requires the Court to determine, among other things, whether a state's alleged failure to reasonably estimate the per capita cost of institutionalization under 42 U.S.C. § 1396n(c)(2)(D) implicates a right actionable under section 1983. In 1990, the Supreme Court was called upon to determine whether the Boren Amendment to the Medicare Act, 42 U.S.C. § 1396a(a)(13)(A), was enforceable in an action pursuant to section 1983. *Wilder v. Hospital Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Boren Amendment provides for reimbursement to health care providers according to rates that the "State finds, and makes assurances to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A).

In its analysis, the Supreme Court observed that section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. *Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517. The Court continued that because section 1983 speaks in terms of rights, privileges and immunities, and not violations of federal law, the courts must determine if the statute in question creates a "federal right" enforceable under section 1983. *Id.* at 509, 110 S.Ct. at 2517. Thus, a plaintiff alleging the violation of a federal statute may sue under section 1983, unless the statute either does not create an enforceable right, or Congress has foreclosed enforcement of the statute in the enactment itself. *Id.* at 508, 110 S.Ct. at 2517 (citing *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

In determining whether a statute creates a federal right, the court must determine whether the provision in question was designed to benefit the putative plaintiff. *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). "If so" the Court continued, "the provision creates an enforceable right unless it reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the governmental unit ... or unless the interest the plaintiff asserts is too 'vague and amorphous' such that it is 'beyond the competence of the judiciary to enforce.'" *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (citations omitted).

The Court concluded that the Medicaid Act creates an enforceable right under section 1983 for the "adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients. The right is not merely a procedural one that rates be accompanied by findings and assurances (however perfunctory) of reasonableness and adequacy; rather the Act provides a substantive right to reasonable and adequate rates as well." *Id.* at 510, 110 S.Ct. at 2517.

The Court relied on several factors in reaching this conclusion. First, the Court found that the Boren Amendment was cast in mandatory terms rather than precatory terms. For example the Act provides that the state plan "*must* provide for payments ..." that are reasonable. 42 U.S.C.

§ 1396a(a)(13)(A). Additionally, the provision of federal funds under the Act are expressly conditioned on compliance with its terms and the Secretary is authorized to withhold funds for non-compliance. 42 U.S.C. § 1396c. The Court found that these requirements were more than a mere "suggestion or 'nudge' " from Congress on what a state should do. Any suggestion that the requirements were mere suggestions, the Court concluded "was nothing more than an argument that the State's findings and assurances need not be correct." *Wilder*, 496 U.S. at 513, 110 S.Ct. at 2519.

The Court acknowledged that the Act did leave some discretion to the states in determining what rates were reasonable and adequate, but concluded that Congress "retained the underlying requirement of 'reasonable and adequate' " rates. *Id.* at 515, 110 S.Ct. at 2520. Similarly, if the Act did not require the rates to be correct, there would be little or no reason to require the Secretary to "review the State's assurances" and reserve the right to withhold funds for noncompliance with its provisions. *Id.* at 516, 110 S.Ct. at 2521.

The Court also rejected the argument that requiring rates which were "reasonable and adequate" was too vague and amorphous to be judicially enforceable. In rejecting this argument, the Court relied on the fact that the statute and related federal regulations "set out factors which the State *must* consider in adopting its rates" and provided "objective benchmark[s]" by which to judge the reasonableness of the rates. *Id.* at 519, 110 S.Ct. at 2522 (emphasis added). The Court observed that although there

> may be a range of reasonable rates, there certainly are *some* rates outside that range that no state could ever find reasonable and adequate under the Act. *Although some knowledge of the hospital industry might be required to evaluate a State's findings with respect to the reasonableness of its rates, such an inquiry is well within the competence of the Judiciary.*

*Id.* at 520, 110 S.Ct. at 2523 (emphasis on "some" in original, latter emphasis added) (footnote omitted).

Finally, the Court noted that in the absence of an express provision in the statute foreclosing section 1983 enforcement, the Court has found foreclosure "when the statute itself creates a remedial scheme that is 'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983' " *Id.* at 521, 110 S.Ct. at 2523 (quoting *Middlesex County Sewerage Authority v. National Sea Clammers Assn,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981)). As an example of the type of scheme so comprehensive as to preclude section 1983 suits, the Court discussed the remedial scheme found in the Federal Water Pollution Control Act at issue in a prior case, *Middlesex County Sewerage Authority v. National Sea Clammers Assn,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981).

The Court noted as evidence of a congressional intent to foreclose section 1983 suits, that the Federal Water Pollution Control Act grants the Environmental Protection Agency substantial enforcement power through the use of "noncompliance orders, civil suits, and criminal penalties and which included two citizen-suit provisions...." The Court concluded that the Medicaid Act contains no comparable remedial provisions. *Id.*

In *Wilder*, in compliance with the Medicaid Act's requirement to adopt an administrative review procedure, the state of Virginia adopted a three-tiered administrative scheme. In concluding that such a limited remedial scheme could not have been intended to foreclose a section 1983 suit, the Court mentioned that the federal regulations allowed the States to limit the issues that may be raised at the administrative proceedings. *Id.* 496 U.S. at 523, 110 S.Ct. at 2525. Considering all of these factors, the Supreme Court in *Wilder* concluded that the Boren Amendment to the Medicaid Act which provides for reimbursement to health care providers, created a substantive right which could be enforced individually by way of a section 1983 action.

Having reviewed *Wilder*, we now must turn to the Medicaid Act's Waiver Program provision at issue in this case. Under section 1396n(c)(1) of the Medicaid Act, the Secre-

tary may, by waiver, approve a State plan to provide home and community based services to individuals who would otherwise qualify for hospitalization or institutionalization, the cost of which could be reimbursed under the State plan. Subsection (2) provides that "[a] waiver shall not be granted under this sub-section unless the State provides assurances satisfactory to the Secretary that— ..." necessary safeguards have been taken to protect the health and welfare of individuals provided services under the waiver, and

> (D) [u]nder such waiver the average per capita expenditure estimated by the State in any fiscal year for medical assistance provided with respect to such individuals does not exceed 100 percent of the average per capita expenditure that the state reasonably estimates would have been made in that fiscal year for expenditures under the State plan for such individuals if the waiver had not been granted....

42 U.S.C. § 1396n(c)(2)(D). Subsection (f) provides that

> (1) [t]he Secretary shall monitor the implementation of the waivers granted under this section to assure that the requirements for such waiver are being met and shall, after notice and opportunity for a hearing, terminate any such waiver where he finds noncompliance has occurred.

Finally, 42 C.F.R. § 441.303(f)(1) provides the formula which States are required to use in determining the per capita expenditure costs discussed above.

A thorough analysis of this statute and its related regulations leads us to conclude that the provisions of the Medicare Act's Waiver Program establish rights actionable under section 1983. First, like in *Wilder*, the Waiver Program speaks in terms which are mandatory, not precatory.[2] The provision of the Medicaid Act discussed in *Wilder* required that a State *must* "provide ... for payment ... of the ... services ... *which the State ... makes assurances satisfactory to the Secretary, are reasonable and adequate....*" *Wilder*, 496 U.S. at 513, 110 S.Ct. at 2519 (emphasis added). The provision of the

Medicaid Act at issue here is also cast in mandatory terms. The Act provides that *unless* the state provides assurances satisfactory to the Secretary that it has complied with various requirements, the Secretary *shall not* grant the waiver. *See* 42 U.S.C. § 1396n(c)(2). For example, the waiver *shall not* be granted *unless*, among other things, the State reasonably estimates the per capita cost of institutionalization in calculating the cost cap on home based care. 42 U.S.C. § 1396n(c)(2)(D).

Similarly, in estimating the per capita expenditures discussed above, the State *must* use a detailed and fairly complex formula provided by the Federal Government found in 42 C.F.R. § 441.303(f)(1). Finally, like in *Wilder*, provision of federal funds is expressly conditioned on compliance with the requirements of the Waiver Program provisions and the Secretary "*shall* ... terminate any such waiver where he finds noncompliance has occurred." 42 U.S.C. § 1396n(f)(1).

Furthermore, in determining that the provisions at issue in *Wilder* created a binding obligation on the States, the Supreme Court considered the fact that the statute provided adequate guidelines for the State to follow. In this case, the requirement that the State "reasonably estimates" the per capita expenditures is not too vague and amorphous to be judicially enforceable, because, like in *Wilder*, the statute and related federal regulations "set out factors which the State *must* consider in adopting its rates" and provides "objective benchmark[s]" by which to judge the reasonableness of the rates. *Id.* at 519, 110 S.Ct. at 2522 (emphasis added).

As noted above, the Federal Regulations provided a detailed formula for the States to apply in determining the per capita expenditures, and the State must provide assurances that the necessary safeguards have been taken to protect the health and welfare of individuals involved in the program. As the Court observed in *Wilder*, although "some knowledge of the hospital industry might be required to evaluate a State's findings with

---

**2.** We note again that although participation is voluntary, participating states must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services.

respect to the reasonableness of its ... [per capita estimates], such an inquiry is well within the competence of the Judiciary." *See id.* at 520, 110 S.Ct. at 2523.

The Defendants rely heavily on the recent Supreme Court case *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), in support of their argument that the Waiver Program does not create a right enforceable under section 1983. Although we understand that the *Suter* opinion has generated some confusion as to the appropriate test courts should use in determining when a statute creates section 1983 rights, *see Chan v. City of New York,* 803 F.Supp. 710 (S.D.N.Y.1992); *Lampkin v. District of Columbia,* No. 92–0910, 1992 WL 151813 (D.C.D.C. June 9, 1992), we believe that the decision we reach today—that the provisions of the Medicaid Act's Waiver Program do create section 1983 enforceable rights—is wholly consistent with both *Wilder* and *Suter.*

First, *Suter,* as the Defendants concede, did not by any means overrule *Wilder.* Rather the majority in *Suter* took substantial pains to distinguish *Wilder. Suter,* —— U.S. at ——–——, 112 S.Ct. at 1367–69; *Frances J. v. Bradley,* No. 92–C5190, 1992 WL 390875 (N.D.Ill. Dec. 15, 1992). After carefully reading *Suter,* and considering the great similarity between the statute involved here and the one at issue in *Wilder,* we readily conclude that *Suter* is distinguishable from the case at bar for the same reasons that the *Suter* Court distinguished *Wilder.*[3] We therefore hold that, like in *Wilder,* the provisions of the Medicaid Act involved in the case at bar do create rights enforceable under section 1983.

In *Suter,* the Court held that a provision of the Adoption Assistance and Child Welfare Act of 1980 ("AACWA") which requires a state to make "reasonable efforts" to prevent or eliminate the need for removal of the child from his home, and to make it possible for the child to return to his home, did not create a right enforceable under section 1983. In reaching this conclusion the Court distinguished *Wilder* on several points, all of which are applicable to the case at bar.

For example, the fact that the AACWA provides "[n]o further statutory guidance ... as to how 'reasonable efforts' are to be measured" was of great concern to the Court in determining that the statute did not create a section 1983 enforceable right. *Id.* —— U.S. at ——, 112 S.Ct. at 1368. The Court went on to observe that in the absence of such guidance, the "meaning [of reasonable efforts] will obviously vary with the circumstances of each individual case. How the State was to comply with this directive, and with the other provisions of the Act, was, within broad limits, left up to the State." *Id.*

As discussed at some length above, quite the opposite is the case here. The Waiver Program provides an elaborate formula which the State must use in determining the average per capita expenditure. Furthermore, the State must assure the Secretary that necessary safeguards have been taken to ensure that the health and welfare of the recipients will be provided in compliance with 42 C.F.R. § 441.302. Additionally, the State must make assurances that "all facilities covered by ... the Act, in which home and community-based services will be provided, are in compliance with applicable State standards that meet the requirements of 45 C.F.R. Part 1397 for board and care facilities." 42 C.F.R. § 441.302(a)(3). Because of the substantial guidance provided by the statute and supporting regulations, the relevant terms and directives will not "vary with the circumstances of each individual case."

The *Suter* Court also observed that

[t]he legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.' There can, of course, be no knowing acceptance if a state is unaware of the

---

**3.** The Defendant also cites several district court cases which, like *Suter,* found that the given statutory provision in question did not create a right enforceable under section 1983. We find that those cases are distinguishable from this case for the same reasons *Suter* is distinguishable from *Wilder,* upon which we rely. *See Chan v. City of New York,* 803 F.Supp. 710 (S.D.N.Y. 1992); *Lampkin v. District of Columbia,* No. 92–0910, 1992 WL 151813 (D.C.D.C. June 9, 1992); *Frances J. v. Bradley,* No. 92–C5190, 1992 WL 390875 (N.D.Ill. Dec. 15, 1992).

conditions or is unable to ascertain what is expected of it. *Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.* *Id.* —— U.S. at ——, 112 S.Ct. at 1366 (quoting *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)) (emphasis added). The Court in *Suter* concluded that the only condition placed on the State in order to receive federal funds was that the State submit a *plan* to be approved by the Secretary. But the Court found strong evidence that the directive was not a binding obligation on the States in the fact that the regulations lacked specificity and did not provide notice to the States that there were further conditions on the receipt of funds from the Federal Government.

This differs significantly from the Medicaid Act provision discussed in *Wilder* which actually required the State to adopt reasonable and adequate rates, not just make a reasonable effort to do so. Similarly, in the case at bar, Congress' grant of federal money is conditioned on compliance with mandatory directives. Furthermore, the statute and its accompanying regulations provide the states with elaborate guidelines, and the program is subject to termination by the Secretary in the case of non-compliance. We must therefore draw the conclusion that this is the type of unambiguous conditioning on federal grants contemplated by the Court in *Pennhurst* and *Suter.*

Finally, absent a provision in the Act constituting an express preclusion of a section 1983 remedy, the Supreme Court has "found private enforcement foreclosed only when the Statute itself creates a remedial scheme that is 'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.'" *Wilder,* 496 U.S. at 521, 110 S.Ct. at 2523 (citation omitted). As discussed above, the *Wilder* Court provided examples of schemes sufficiently comprehensive to manifest congressional intent to foreclose section 1983 action. These examples serve to underline the fact that the scheme provided in this case is in no way as comprehensive as those found to preclude section 1983 actions. Rather, the Ohio scheme is similar to that of the Medicaid provision at issue in *Wilder* which the Court found did not preclude a section 1983 action.

The *Wilder* Court discussed the remedial scheme found in the Federal Water Pollution Control Act at issue in *Sea Clammers.* The Court noted as evidence of a congressional intent to foreclose section 1983 suits that the Federal Water Pollution Control Act grants the Environmental Protection Agency substantial enforcement power through the use of "noncompliance orders, civil suits, and criminal penalties and which included two citizen-suit provisions...." The Court concluded that the Medicaid Act contains no comparable remedial provisions. In *Wilder,* in compliance with the Medicaid Act's requirement to adopt an administrative review procedure, the State of Virginia adopted a three-tiered administrative scheme. In concluding that such a limited remedial scheme could not have been intended to foreclose a section 1983 suit, the Court mentioned that the federal regulations allowed the States to limit the issues that may be raised at the administrative proceedings. *Id.* at 523, 110 S.Ct. at 2525.

Under the three-tiered remedial scheme in this case, like in the *Wilder* case, a plaintiff may appear before a hearing officer. The hearing officer, however, is limited in the types of issues he or she may rule on. According to the uncontroverted assertions of the Plaintiffs, individuals may not, for example, challenge any caps on the limits of services, nor challenge the reasonableness or arbitrariness of any enactments by the Defendants. The complaining individuals may make an administrative appeal after appearing before the hearing officer, and then seek an appeal in the Ohio Court of Common Pleas. Thus, again, as in *Wilder,* there is no more than a three-tiered remedial scheme which does not approach the extensive scheme described in the *Clammers* case.

In light of the *Wilder* and *Suter* cases, we find that the Waiver Program provides sufficient notice to the States and provides adequate guidelines to create a binding obligation on them. We thus hold that this obligation creates a right enforceable under

section 1983. We reject the notion that the directive that the States provide "reasonable estimates of the per capita expenditures ..." imposes a "rather· generalized duty on the State" not to be enforced by private individuals. Rather, it imposes, with sufficient clarity and substantial guidance, a binding obligation on the state to fulfill the requirements of the Act, the failure of which is actionable by private individuals under section 1983.

Furthermore, the subject matter of this legislation is not beyond the scope of judicial competence. ·As the *Wilder* Court pointed out "[a]lthough some knowledge of the hospital industry might be required to evaluate a State's findings with respect to the reasonableness of its rates, such an inquiry is well within ·the competence of the Judiciary." *Wilder*, 496 U.S. at 520, 110 S.Ct. at 2523. ·We believe this conclusion applies with equal force to reasonable per capita expenditures.

With respect to the Waiver Program, we are not dealing with "vague and amorphous" terms, or mere congressional "suggestions," "nudges" or "preferences." Congress provided unambiguous directives accompanied by adequate guidelines with which the states are obligated to comply. The Waiver Program provisions therefore, create a right, the violation of which is actionable under section 1983.

## II

The Defendant also claims that the Plaintiffs' Due Process claim should be dismissed. The Plaintiffs' Due Process claim rests, in large measure, on. fact specific assertions concerning the neutrality of the hearing officer. As the Plaintiffs point out, discovery has not yet commenced. Because the Plaintiffs have not yet had the opportunity to produce the evidence required to rebut the Defendants' assertions on this issue, we · must, therefore, rule against the Defendants.

The Plaintiffs further claim that they may pursue an action under 42 U.S.C. §§ 1396a(a)(8) & (19) and its accompanying regulations. We disagree. In *Cook v. Hairston*, the United States Court of Appeals for the Sixth Circuit considered this very issue. The Sixth Circuit concluded that these provisions of the Medicaid Act did not create

enforceable rights. No. 90–3437, 1991 WL 253302, 948 F.2d 1288 (6th Cir. Nov. 26, 1991). We therefore find in favor of the Defendant on this issue. Similarly, because the Defendants have amended state regulations in order to comply with the federal law, their section 42 U.S.C. § 1396a(a)(17) and 42 C.F.R. § 431.18 claims too are barred. *See Coleman v. Hairston*, No. C–1–89–177, 1990 WL 482465 (S.D.Ohio, Aug. 9, 1990), *aff'd* 983 F.2d 737 (6th Cir.1993).

## III

▪ The Plaintiffs, Randy and Diane Wood, have brought this suit on behalf of themselves, their son Evan Wood, age three, and on behalf of all similarly situated parents and children· in the State of Ohio. The Defendants maintain that the Plaintiffs' section 1983 claim must be dismissed because the named Plaintiffs, Randy and Diane Wood are not intended beneficiaries of the Waiver Program. We disagree. As the Plaintiffs have pointed out, the Medicaid Act's appropriations section provides, in relevant part, for the furnishing of medical assistance

> on behalf of families with dependant children and of aged, blind, or disabled individuals ∴.. to help such families and individuals attain or retain capability for independence or self care....

42 U.S.C. § 1396.

We believe that this language supports the conclusion that the Medicaid Act was intended for the benefit of the family as a whole. With respect to the Medicaid Act's Waiver Program, certainly the number of hours a family is provided home based care, and the level of the quality of that care will have a direct impact on the lives of all members of a dependant child's family. We therefore conclude, that the named Plaintiffs are among the intended beneficiaries of this Act and may, consequently, maintain this suit.

## IV

▪ Finally, the Defendant has moved this Court for certification for interlocutory appeal. 28 U.S.C. § 1292(b) provides in pertinent part,

[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

This case involves complicated issues concerning the scope of an individual's rights under the Medicaid Act's Waiver Program and its related federal and state regulations. Although the Plaintiffs in this case have worked out an agreement with the Defendants providing their son Evan with adequate care pending the outcome of this litigation, there are purportedly hundreds of similarly situated individuals who are not receiving the care the Plaintiffs claim they are entitled to.

Furthermore, in light of the confusion generated by the *Suter* opinion, and the difficulty the district courts have had in reconciling that opinion with the *Wilder* opinion, *see, e.g., Chan v. City of New York,* 803 F.Supp. 710 (S.D.N.Y.1992) (stating that after the *Suter* decision the jurisprudence concerning rights enforceable under section 1983 is "in a state of flux"); *Lampkin v. District of Columbia,* No. 92–0910, 1992 WL 151813 (D.C.D.C. June 9, 1992) (claiming that *Suter* "broke from this [the *Wilder* ] line of inquiry"), we believe that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order" would, without question, materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). We therefore, grant the Defendants' Motion to Certify for Interlocutory Appeal.

### CONCLUSION

Accordingly, for the forgoing reasons, we hereby GRANT in part and DENY in part the Defendants Motion to Dismiss and in the Alternative for Summary Judgement, and GRANT the Defendants' Motion to Certify for Interlocutory Appeal.

SO ORDERED.