**NEW YORK STATE FEDERATION OF TAXI DRIVERS, INC., individually on behalf of its members and others similarly situated, Plaintiff,**

v.

**The CITY OF NEW YORK, and New York City Taxi and Limousine Commission, Defendants.**

**No. 02CV3763NG.**

United States District Court, E.D. New York.

July 3, 2003.

Lee Squitieri, Squitieri & Fearon, LLP, New York City, for Plaintiff.

Deborah Rand, The City of New York Law Department, New York City, for Defendants.

## ORDER

GERSHON, District Judge.

Plaintiff, New York State Federation of Taxi Drivers, Inc. ("Federation"), a not-for-profit corporation whose members consist of for-hire vehicle base stations, for-hire vehicle owners and lessees, and for-hire vehicle drivers, brings this action under 42 U.S.C. § 1983, against defendants City of New York ("City") and the New York City Taxi and Limousine Commission ("TLC") on behalf of itself and as a class representative of for-hire vehicle base stations, for-hire vehicle owners and lessees, and for-hire vehicle drivers. It seeks compensatory and punitive damages for violation of the class members' right under the Eighth Amendment to be protected against the imposition of "Excessive Fines" for what plaintiff terms "Multiple Fine Practices" by defendants. Defendants move to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Background

The TLC is authorized, under Section 2303(a) of the Charter of the City of New York, to regulate and supervise the business and industry of transportation of persons by licensed vehicles for-hire in the City. Under Section 2303(b), the TLC is authorized to promulgate rules and regulations relating to standards and conditions of service. It also is authorized, under Section 19–503 of the Administrative Code of the City of New York, to promulgate rules and regulations necessary to exercise the authority conferred upon it by the Charter. Pursuant to this authority, the TLC promulgated Title 35, Chapter 6 of the Rules of the City of New York, which sets forth the Rules and Regulations governing for-hire vehicles.

Section 6–12 sets forth the "Conditions of Operation Relating to For–Hire Vehicles." Section 6–13 sets forth the requirements for "Partitions and Emergency Lights." Both of these sections state the following:

A for-hire vehicle base and a for-hire vehicle owner shall be jointly and severally responsible for the compliance with the following provisions and liable for violation thereof. No for-hire vehicle shall be used in the course of operations of a for-hire vehicle service unless the vehicle is used in compliance with the following . . .

35 R.C.N.Y. §§ 6–12, 6–13. Section 6–12 goes on to enumerate thirteen requirements, (a) through (m), related to the safety and operation of for-hire vehicles, such as registration and license requirements, and conditions for dispatching for-hire vehicles by the base station owner and vehicle owner. Section 6–13(a) requires that for-hire vehicles have a partition and a protective plate that isolates the driver

from the rear seat passengers, and Section 6–13(b) requires that for-hire vehicles have a distress or help signal lighting system. Section 6–22 sets forth "Penalties for Violation of For–Hire Vehicle Rules," including the requirements and conditions in Sections 6–12 and 6–13.

### Plaintiff's Complaint

Plaintiff's claim is that the TLC had a practice, which was discontinued in mid–2002, characterized as the "Multiple Fine Practices," of "imposing and collecting" the full penalty for violations of 35 R.C.N.Y. § 6–12(a)-(m) and § 6–13(a)–(b) from each of the base station owner, the vehicle owner and the vehicle lessee. ¶ 35. Plaintiff asserts that "the fines described in 35 R.C.N.Y. § 6–23 are fines within the meaning of the Eighth Amendment of the Constitution of the United States" and that "the Multiple Fine Practices constitute Constitutional excessiveness in that the imposition and collection of double and triple fines under the Multiple Fine Practices exceeds the statutory limit which provides only for joint and several liability for violations of 6–12 and 6–13 and therefore is grossly disproportional under the Supreme Court test set forth in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)." [1] ¶¶ 48–9.

Plaintiff attaches to the complaint "representative examples" of the Multiple Fine Practices to support its claim. The attachment provides copies of seventeen summonses which show that, on several occasions in April and May of 2002, consecutively numbered summonses were written to both the base station owner and the vehicle owner for the same vehicle violation. Plaintiff also attaches copies of receipts for payments of summonses made by Dominican Car Service. The receipts indicate the number of the summons and the amount that was paid for the violation. Some of the receipts indicate that some consecutively numbered summonses were paid by Dominican. However, only one of the copies of the receipts submitted is for payment of a summons with the same number as one of the copies of summonses offered as an example of the Multiple Fine Practices. That summons, No. 705370A, was made out against Dominican Car Service, and the receipt shows one payment for $50.00.[2]

■ Section 1983 provides a federal remedy for the deprivation of any rights, privileges, or immunities secured by the United States Constitution and federal law. Thus, a plaintiff must assert a violation of a federal right to invoke a remedy provided by Section 1983. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105–06, 110 S.Ct. 444, 107

1. Although plaintiff cites Rule 6–23, that Rule does not set forth the penalties for violations of Sections 6–12 or 6–13. Section 6–23 is entitled "Program for Persistent Violators of For–Hire Vehicles" and sets out a schedule of points that will be added to licenses of drivers who have been found guilty of three or more violations within a fifteen month period. Thus, it will be assumed that plaintiff refers to the penalties set forth in Section 6–22, since this is the only section that sets forth any monetary penalties.

2. Defendants initially raised the issue of plaintiff's lack of standing as a class represen-

tative in a footnote in their motion. Plaintiff claims, in its opposition to the motion, that it has institutional standing to maintain this suit. In reply papers, defendants argue that plaintiff cannot show institutional standing because plaintiff has not alleged that any single individual or member has been subjected to multiple penalties for the exact same violation on the same date, nor has it alleged that any of its individual members has been injured by the challenged Multiple Fine Practices. In light of the clear lack of merit to the claim, the court will not require further briefing on the standing issue but will proceed to the merits.

L.Ed.2d 420. (1989). To state a civil rights claim pursuant to 42 U.S.C. § 1983,

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal of a claim is improper "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir.2002). "In deciding whether a complaint states a claim, 'a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor.'" *Id.* (quoting *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994)). "The fundamental issue at the dismissal stage is not whether plaintiff is likely to ultimately prevail, but whether it is entitled to offer evidence in support of it claims." *Id.* at 185. (internal citations omitted).

### Excessive Fines under the Eighth Amendment

Plaintiff claims that its members' Eighth Amendment rights, and the Eighth Amendment rights of others similarly situated, were violated because they paid a fine for a summons they received and, when someone else was given a summons for the same offense and also paid, the TLC was collecting more than it was authorized to collect by Sections 6–12 and 6–13, which impose only joint and several liability.

█ Plaintiff relies on two cases to argue that civil penalties are subject to the Eighth Amendment. First, plaintiff relies on *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which the Supreme Court held that, under certain statutes, civil forfeiture amounted to a monetary punishment subject to the limitations of the Excessive Fines Clause of the Eighth Amendment. Second, plaintiff relies on *United States v. Bajakajian,* 524 U.S. 321, 333, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), which held that a criminal fine could be excessive, and in violation of the Eighth Amendment, if it was "grossly disproportionate to the gravity of the offense." Plaintiff cites no authority for the proposition that administrative penalties of the sort challenged here could be subject to the Eighth Amendment. But even assuming that they could be, the complaint states no claim that any individual penalty, ranging in amount from $15.00 to $1,000.00, depending upon the type of offense and the number of summonses issued for the same offense, was excessive under the Eighth Amendment or "grossly disproportionate" under *Bajakajian.* Nor does plaintiff claim that any penalty would be "grossly disproportionate" if three people actually paid it. The only claim that plaintiff makes that the Multiple Fine Practices is unconstitutional is that it violates the City's Rules, which provide that the fines be imposed jointly and severally. Thus, plaintiff's claim that only one person or entity should have to pay under the City's Rules of joint and several liability raises no issue of federal law.

### Conclusion

In sum, plaintiff presents no issue of federal constitutional law, and the defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) is granted. Plaintiff has not sought leave to amend the complaint, and, since the briefs on the motion make clear that the plaintiff's only claim is the one addressed above, there is no rea-

son to offer leave to amend. The Clerk of Court is directed to close the case.

**SO ORDERED.**