**HENRY'S WRECKER SERVICE COMPANY OF FAIRFAX COUNTY, INC., et al.**

v.

**PRINCE GEORGE'S COUNTY.**

No. Civ.A. DKC2001–3727.

United States District Court, D. Maryland.

Aug. 16, 2002.

Frank J. Emig, Law Office, Greenbelt, MD, for Plaintiffs.

Sean D. Wallace, Rhonda Lee Weaver, Office of Law for Prince George's County, Upper Marlboro, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this local regulatory matter is Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be denied without prejudice and Plaintiffs' claims for damages under § 1983 will be dismissed for lack of jurisdiction.

### I. Background

The following facts are alleged in the complaint by Plaintiffs, Henry's Wrecker Service of Fairfax County, Inc. and Robey Towing & Transportation, Inc. Plaintiffs are tow truck operators, respectively incorporated in the Commonwealth of Virginia and the State of Maryland. Both Plaintiffs are licensed to provide towing services in Prince George's County, Maryland. Since December 1998, Plaintiffs have entered into agreements with private property owners to tow vehicles parked in violation of the owners' policies. Prince George's County Local Ordinance, § 26–142.06, requires that the tow operators notify the Prince George's County Police of the location and identification of the vehicle within one hour of towing the vehicle. Pursuant to Prince George's County Local Ordinance, § 26–142–08, the County must give notice to the owners that the car is impounded. Since as early as December 1, 1998, the County has charged the tow operators with the cost of identifying and notifying the impounded vehicle owners.

Defendant has repeatedly informed Plaintiffs that the penalty for failure to pay these fees is revocation or suspension of their licenses to tow cars in Prince George's County.

Plaintiffs' complaint brought pursuant to 42 U.S.C. § 1983 alleges in count one that Defendant's identification policy violates 49 U.S.C. § 14501 and impermissibly regulates Henry's Wrecker Service Company. In count two, the complaint alleges an identical claim with regard to Robey Towing & Transportation, Inc. Plaintiffs seek damages in the amount of $100,000.00, interest, attorneys' fees, costs, and "such other and further relief as this Court deems just and proper."

### II. Analysis

Plaintiffs seek primarily monetary relief under 42 U.S.C. § 1983 for Defendant's alleged violation of 49 U.S.C. § 14501(c)(1), a federal statute which prevents State or local regulation of several aspects of motor vehicle carriers' business operations. Section 14501(c) was first passed in 1994 as part of the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501, which attempted, in part, to deregulate the motor carrier industry. *See* Pub.L. No. 103–305, 108 Stat. 1569, 1606–07. The general preemption rule was recodified in its current form in 49 U.S.C. § 14501(c)(1) of the Interstate Commerce Commission Termination Act (ICCTA) and states the following:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker,

or freight forwarder with respect to the transportation of property.

Plaintiffs claim that § 14501(c)(1) confers on them, as motor carriers, the right to conduct their towing business free of local regulation with respect to "price, route, or service." Accordingly, Plaintiffs assert that the County's requirement that they pay owner notification fees gives them a cause of action for damages pursuant to § 1983 for the deprivation of their rights under § 14501(c)(1).

 While Defendant does not raise the question of whether Plaintiffs have a cause of action for damages under § 1983 for a violation of § 14501(c)(1), the court must examine this issue as a threshold determination because the court lacks subject matter jurisdiction unless there is a federal question presented. Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

tion at law, suit in equity, or other proper proceeding for redress.

In light of a June 2002 Supreme Court decision, *Gonzaga University v. Doe*, — U.S.——, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), Defendant's alleged violation of § 14501(c)(1) does not give rise to an action for damages under § 1983 although a suit for injunctive relief might lie.[1]

 In *Maine v. Thiboutot*, 448 U.S. 1, 4–8, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Court first permitted § 1983 actions to be brought against state actors who had violated rights created by federal statute. The Court held that the plaintiffs had a right, under the Social Security Act, to seek a remedy under § 1983 for Maine's failure to administer their monetary entitlements. *Id.* at 4, 100 S.Ct. 2502. However, not all federal statutes create rights which are remediable by § 1983. "[T]o seek redress through § 1983 ... a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis in original).

 In *Gonzaga*, the Court tightened the test used to determine whether a statute creates federal rights.[2] Though the

1. On the same day that it decided *Gonzaga*, the Supreme Court decided *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, — U.S. ——, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002), a case brought under § 14501(c), the same statute at issue here, without addressing the question of whether a Plaintiff could bring a cause of action under the statute. However, in that case, unlike the case currently before the court, the plaintiff was seeking only injunctive relief as opposed to damages. "A Plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14,

103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Therefore, the Supremacy Clause provides a basis for jurisdiction separate from § 1983 for claims seeking injunctive relief and the Court in *City of Columbus* did not need to consider whether there was a private right of action for damages under § 14501(c).

2. While *Gonzaga* deals with the conferral of rights by statute in the context of whether a statute creates a private right of action, it is equally applicable in the context of § 1983. The court expressly stated that the question involved in both cases is the same; whether a statute creates rights as opposed to merely benefits or interests. "[W]e further reject the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide he determination of

Court did not flatly reject the existing three factor test articulated in *Blessing*, the Court did "reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga*, —— U.S. at ——, 122 S.Ct. at 2275.[3] Under the new rule set forth by the Court, courts must look to "rights-creating language" and an "individual focus" in the statute's text and structure to determine whether Congress unambiguously intended to create individual rights. *Id.* at 2278–2279. The one pre-*Gonzaga* case that dealt with this question directly, in the context of § 14501(c)(1), *Petrey v. City of Toledo*, 246 F.3d 548, 565 (6th Cir.2001), found that a cause of action exists under § 1983 for violation of § 14501(c)(1). However, in light of the Court's admonition that the pre-*Gonzaga* test "led some courts to interpret *Blessing* as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect," *id.* at 2275, this court must take a fresh look at issue.

In *Petrey*, the court relied on *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), to determine that a plaintiff could seek relief under § 1983 for the violation of § 14501(c)(1) by a local towing regulation. The court in *Petrey* applied the three-factor test to determine that § 14501(c)(1), like the National Labor Relations Act ("NLRA") at issue in *Golden State*, provided a right to practice business free of local regulation. However, in *Golden State*, while the Court did apply the earlier three factor test, it additionally focused on language from the NLRA to determine that it conferred remediable rights: "It is the purpose and policy of this chapter ... to prescribe the legitimate rights of both employees and employers in their relations affecting commerce ...," *Id.* at 110, 110 S.Ct. 444, *quoting* 29 U.S.C. § 141(b) (1982 ed.). Therefore, while the same result might be reached in *Golden State* under either the old test or the *Gonzaga* test, an analysis of § 14501(c)(1) under the *Gonzaga* test dictates a different result than that arrived at in *Petrey*.

In *Gonzaga*, —— U.S. at ——, 122 S.Ct. at 2279, the Court determined that the Family Educational Rights and Privacy Act of 1974 ("FERPA"), which provides for the withdrawal of federal funding from educational institutions that impermissibly release student records, does not confer rights to individual students. The Court found that FERPA conferred no rights enforceable under § 1983 because, "FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions." *Gonzaga*, —— U.S. at ——, 122 S.Ct. at 2279.[4] The

---

whether a statute confers rights enforceable under § 1983." *Gonzaga*, —— U.S. at ——, 122 S.Ct. at 2275.

**3.** *Blessing* had articulated a three factor test to determine which federal laws confer individual rights: "First, Congress must have intended that the provision in question benefit the plaintiff.... Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence ... Third, the provision

giving rise to the asserted right must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353 (internal citations omitted).

**4.** The nondisclosure provisions of FERPA state, in pertinent part: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting

Court contrasted FERPA's lack of "rights-creating" language with the language of Title VI of the Civil Rights Act of 1964 [5] and Title IX of the Education Amendment of 1972,[6] "because those statutes are phrased 'with an *unmistakable focus* on the benefitted class.'" *Id.*, at 2275, *quoting Cannon,* 441 U.S. at 691, 99 S.Ct. 1946.

■ Similarly, Plaintiffs' contention that § 14501(c)(1) grants individual rights remediable by § 1983 fails because the statute's text does not "unambiguously," with "rights-creating language," convey Congress' intent to confer individual rights to motor carriers. "The question of whether Congress ... intended to create a private right of action [is] definitively answered in the negative' where 'a statute by its terms grants no private rights to any identifiable class." *Gonzaga,* —— U.S. at ——, 122 S.Ct. at 2275 *quoting Touche Ross & Co. v. Redington,* 442 U.S. 560, 576, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Section 14501(c)(1) merely forbids State and local legislation in the areas of "price, route, or service," as it relates to "any motor carrier ... or any motor private carrier, broker, or freight forwarder." Without "rights-creating language," characterized by a concrete expression of the set of rights to be granted to individual motor carriers, there is no textual basis for Plaintiffs' contention that § 14501(c)(1) confers individual rights remediable by § 1983.

In addition to FERPA's text, the *Gonzaga* Court looked to the statute's structure to determine that FERPA was not intended to confer specific rights on the individual students. *Id.* at 2278. The Court determined that FERPA did not create a private right of action because FERPA provides for an aggregate action only: the withdrawal of public institution funding for the impermissible release of student records. *Id.* The Court found that "the individualized right to withhold consent and prevent the unauthorized release of personally identifiable information" is "two steps removed from the interests of individual students and parents and clearly does not confer the sort of 'individual entitlement' that is enforceable under § 1983." *Id.* at 2277, *quoting (Blessing,* 520 U.S. at 343, 117 S.Ct. 1353). Similarly, the structure of § 14501(c)(1) does not support Plaintiffs' assertion that it provides remediable rights under § 1983 because § 14501(c)(1) does not create an "individual entitlement" from the federal government to motor carriers. Rather, it merely creates a regulatory scheme which requires State and local authorities to *refrain* from regulating motor carriers. The statute's "focus on the person regulated rather than the individuals protected create(s) no implication of an intent to confer rights on a particular class of persons." *Gonzaga,* —— U.S. at ——, 122 S.Ct. at 2277, *quoting Alexander v. Sandoval,* 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (internal citation omitted). The "person[s] regulated," in § 14501(c)(1) are the State and its political subdivisions, insofar as they are forbidden from promulgating laws relating to "price, route, or service of any motor carrier." Like FER-

the release of education records (or personally identifiable information contained therein ...) of students without the written consent of their parents to any individual, agency, or organization." 20 U.S.C. § 1232g(f).

**5.** Title VI, 42 U.S.C. § 2000d (1994 ed.), provides: "[n]o person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal finan-

cial assistance" on the basis of race, color, or national origin.

**6.** Title IX, 20 U.S.C. § 1681(a), states: "[n]o person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance."

PA, the structure of § 14501(c)(1) does not indicate an intent to grant a specific entitlement because it merely regulates the activities of the targeted governmental entities.

At best, § 14501(c)(1) contemplates that the motor carriers' concerns lie within the zone of interest of the statute. However, "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]" *Gonzaga*, —— U.S. at ——, 122 S.Ct. at 2275. Accordingly, as the text and structure of § 14501(c)(1) do not demonstrate a congressional intent to confer individual rights to motor carriers, Defendant's alleged violations of that statute do not give rise to a cause of action for damages under § 1983.

### III. Conclusion

For the foregoing reasons, while Defendant's motion to dismiss will be denied without prejudice, Plaintiffs' claims for damages under § 1983 will be dismissed for lack of jurisdiction. As stated above, the complaint seeks generally "other and further relief," but does not specifically seek injunctive relief. Plaintiffs will have 15 days to amend their complaint, if they wish, to articulate specific claims for injunctive relief challenging § 14501(c)(1) directly under the Supremacy Clause. Otherwise, the complaint will be dismissed in its entirety. A separate order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this —— day of August, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) BE, and the same hereby IS, DENIED WITHOUT PREJUDICE;

2. Plaintiffs' claims for damages under 42 U.S.C. § 1983 BE, and the same hereby ARE, DISMISSED for lack of jurisdiction;

3. Plaintiffs have fifteen (15) days to amend their complaint to articulate specific claims for injunctive relief or their complaint will be dismissed in its entirety; and

4. The Clerk transmit copies of the Memorandum Opinion and this Order to counsel for the parties.