**Kimberly ARRINGTON, et al., Plaintiffs,**

v.

**Bill FULLER, et al., Defendants.**

**No. CIV.01–A–923–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 13, 2002.

Maryanne Melko Prince, Montgomery, AL, Tiernan W. Luck, III, Luck Prescott & Assoc., Montgomery, AL, Brian Howard Paddock, Cookville, TN, for plaintiffs.

James Edward Long, Jennifer M. Bush, Ala. Dept. of Human Resources, Montgomery, AL, for Bill Fuller, defendant.

John J. Park, Jr., Sandra Ingram Speakman, Office of Atty. Gen., Montgomery, AL, for Rich Hobson, defendant.

## MEMORANDUM OPINION, ORDER, and PRELIMINARY INJUNCTION

ALBRITTON, Chief Judge.

### I. BACKGROUND

This matter is before the court on Plaintiffs' Request for Rulings on Pending Motions (Doc. # 107)[1] and a Motion for a Preliminary Injunction (Doc. # 74).

The State of Alabama, Department of Human Resources, intercepts income tax refunds of non-custodial parents pursuant to its program of providing child support services to custodial parents. Under the current practice, the State retains funds of custodial parents who formerly received Aid to Families with Dependent Children and attributes those funds to amounts due the government, rather than distributing the funds to families first. The Plaintiffs have sought a preliminary injunction which, among other things, would require Defendant Fuller to hold in trust all state income tax refunds received until Defendant Fuller can properly distribute the funds in compliance with Title IV–D of the Social Security Act, 42 U.S.C. § 657, and 45 C.F.R. § 302.51.

The Plaintiffs appear to be seeking this preliminary injunctive relief only on behalf of custodial parents who formerly received government assistance. *See* Plaintiffs' Memorandum in Support of Preliminary Injunction to Protect Custodial Parents' Rights Under 42 U.S.C. § 657, page 1 n. 1. Of the named Plaintiffs in the Amended Complaint filed in this case, it appears to the court that Plaintiffs Tanya Jackson, Carmelitess Felder, Sharon L. Scott, and Lakisha Woodall fall within this category of custodial parents. *See* Amended Complaint at ¶¶ 17–20.

The law regarding distribution of collected tax rebates was changed in 1996, and requires the State of Alabama to make distributions of income tax refunds to families first. As evidence submitted by Defendant Fuller makes clear, the law now requires that state tax offset proceeds are required to be distributed as if they were regular child support payments. *See* Affidavit of Tom Bernier.

Defendant Fuller also has provided an affidavit to establish that the computer programming required to implement this formula will be in place by December 1, 2002. See Affidavit of Edwina Townsend. The Plaintiffs contend, however, that the new system was required to be in place

---

1. The Plaintiffs ask for ruling on two preliminary injunction motions. In the Request for Rulings, the Plaintiffs state that they have no objection to the referral of the second motion, regarding informative notice, to be referred to a magistrate judge as the Plaintiffs recognize that their request requires a multi-step, time-consuming process. Because the court has not yet had an opportunity to fully explore this option, the Request for Rulings will be DENIED as to that preliminary injunction motion and the Plaintiffs' suggestion will be taken up at a later date.

long before now, and was originally promised to be in place by October 1, 2002.

The income tax refunds are held by Defendant Fuller for six months before they are distributed. The Plaintiffs assert that distributions are now beginning and that they are being irreparably harmed because the income tax refunds are being distributed in violation of federal law and they need the funds they should be receiving in order to subsist.

## II. PRELIMINARY INJUNCTION STANDARD

 A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion.'" *Zardui–Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir.1985) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)), *reh'g denied*, 778 F.2d 793 (11th Cir.1985). To prevail on a motion for a preliminary injunction, a party must prove: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that its own injury outweighs the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. *Haitian Refugee Center, Inc. v. Baker*, 949 F.2d 1109, 1110 (11th Cir. 1991). Failure of Plaintiffs to demonstrate one of these elements requires this court to deny Plaintiffs' request for a preliminary injunction. *Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993).

## III. DISCUSSION

The Plaintiffs have asked the court to rule on a pending motion for a preliminary injunction. The Plaintiffs contend that this court must rule on the pending motion because Fuller has been holding intercepted state tax refunds for a six month period, but is now beginning to distribute those tax refunds, and the distributions are being made under an old system of distribution in violation of federal law. The Plaintiffs request that the funds be frozen until they can be properly distributed under the revised software which Fuller has represented he will have in place by December 1, 2002.

Fuller has raised several arguments in opposition to the Plaintiffs' request. Fuller argues that the elements of a preliminary injunction have not been met, that the Plaintiffs' request is moot, that the Plaintiffs cannot bring an action under 42 U.S.C. § 1983 to enforce the federal law they are seeking to enforce, that the Plaintiffs' claims are barred by sovereign immunity, that no § 1983 claim can be brought against Fuller in his official capacity, and that certain regulations cited by the Plaintiffs do not confer federal rights. The court will address each of these arguments in turn.

1. Elements of a Preliminary Injunction

 Fuller argues that the purpose of a preliminary injunction is to preserve the status quo, but the Plaintiffs seek to alter the status quo through imposition of a preliminary injunction. With respect to the freezing of funds obtained from tax refunds, however, the court finds that this situation is a unique one. First, there is apparently no dispute that the current system of distribution violates federal law. In fact, Fuller purports to be seeking to change department procedure so as to prevent future violations. Further, as Fuller has been holding the funds for a sixth month period, continued retention of the funds would be preserving the status quo. The court concludes, therefore, that Fuller's objection on this basis is unavailing.

 Fuller also argues that the Plaintiffs will not be irreparably harmed as they can recover later any lost child support payments. Fuller further contends that any potential loss of child support pay-

ments is purely speculative, not actual and imminent. The Plaintiffs strenuously contest that they will be harmed, as the money is not currently available to pay bills and living expenses and that the Plaintiffs rely on child support payments for subsistence. The court concludes, therefore, these arguments by Fuller are not sufficient to preclude injunctive relief.

The court now turns to Fuller's remaining objections which are all arguments that there is no substantial likelihood of success on the merits.

## 2. Injunctive Relief Has Become Moot

■ Fuller argues that because the Alabama Department of Human Resources is already implementing software whereby tax refunds will be distributed to families first, the requested relief is moot. Of course, it is undisputed that the distributions are not currently being made with the new software and that software is not expected to be in place until December 1, 2002.

■ A request for injunctive relief may become moot if it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and interim events have eradicated the effects of the alleged violation. *Reich v. Occupational Safety and Health Review Commission,* 102 F.3d 1200, 1201 (11th Cir.1997). Fuller cites to *Addison v. Forest Service,* 108 F.Supp.2d 1365 (M.D.Fla. 2000) in which relief was rendered moot by the adoption of a particular program. In this case, however, although Fuller states that a program has been adopted, it is not yet in effect. The court cannot conclude, therefore, that the mere assurance that the problem will be corrected in December, especially given that erroneous distributions can still occur until that time, is

sufficient to establish that there is no reasonable expectation that the alleged violation will recur and interim events have eradicated the effects of the alleged violation.

## 3. Enforceable Right Under § 1983

The argument by Fuller that the Plaintiffs cannot prevail because they do not have the right to enforce under § 1983 the statutory provision to which they have pointed, Title IV–D of the Social Security Act, presents difficult issues which have not been resolved by the Eleventh Circuit. Although Fuller relies at least in part on *Wehunt v. Ledbetter,* 875 F.2d 1558, 1565 (11th Cir.1989) and on *Maynard v. Williams,* 72 F.3d 848 (11th Cir.1996), the law with regard to enforceable rights under Title IV–D was changed by the United States Supreme Court subsequent to those decisions. Before the court examines the case law interpreting the relevant statutes, however, it is helpful to examine the statutory language and to look briefly at its historical context.

The provision of Title IV–D which the Plaintiffs seek to enforce through their requested preliminary injunction is found in § 657. Section 657 was revised in 1996. As the Plaintiffs explain it, the revision to § 657 increased a custodial parent's entitlement to support distributed by making the family the first claim to past due support collected. Under the statute as it is presently written, as Fuller concedes, tax refunds collected by the State are to be paid first to the family before amounts are paid to the government to reimburse amounts paid to the family as assistance by the State. *See* 42 U.S.C. § 657(a)(2)(a) (Supp.2002).[2] Further, the Plaintiffs identify the option chosen by Alabama for pay-

---

**2.** This section provides as follows:
 To the extent that the amount so collected does not exceed the amount required to be
paid to the family for the month in which collected, the State shall distribute the amount so collected to the family.

ment of arrearages as being a statement of priority under which amounts collected are paid first to the family. It appears to the court that under all of the options for implementation regarding arrearages, the statute provides that the State "shall distribute" the amount collected to the family first. *See* 42 U.S.C. § 657(a)(2)(B).

The historical context of § 657 is significant for purposes of the requested preliminary injunction because the United States Supreme Court specifically referred to § 657, as it was written at the time, in *Blessing v. Freestone,* 520 U.S. 329, 339 n. 3, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), and the former § 657 was in effect at the time of the Eleventh Circuit's decision in *Wehunt.*

In *Wehunt,* the Eleventh Circuit held that Title IV–D does not create an enforceable right under § 1983. The Supreme Court noted the holding in *Wehunt* among conflicting authorities on the issue when it decided *Blessing.* In *Blessing,* the Supreme Court explained that the analysis for determining whether Title IV–D created federal rights enforceable under § 1983 is as follows: first, Congress must have intended that the provision in question benefit the plaintiff; second, the plaintiff must demonstrate that the right protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and third, the statute must unambiguously impose a binding obligation on the states. *Id.* at 340–41, 117 S.Ct. 1353. The Court explained that the rights claimed had to be particularly identified and that a court should not look at Title IV–D as an undifferentiated whole. *Id.* at 342, 117 S.Ct. 1353. While recognizing that some rights might be created under the statute, the Court explained that provisions such as the staffing levels of a state agency and requirements for the data processing system did not create federal rights. *Id.* at 344–45, 117 S.Ct. 1353.

The Court also rejected the idea that a federal right was created by the requirement that a state operate its child support program in compliance with the statute. *Id.*

The Court in *Blessing* left open the possibility that parents to whom child support payments are due may have an enforceable right under Title IV–D. *Id.* at 346, 117 S.Ct. 1353. The Court left for determination by the lower court the question of exactly what rights the plaintiffs were claiming and whether the claims asserted a federal right. *Id.* at 346, 117 S.Ct. 1353. One of the allegations by a mother in the case was that the state agency collected some support payments from her ex-husband, but failed to follow the requirement that the first $50 be given to her. *Id.* at 345–46, 117 S.Ct. 1353. The Court opined that the $ 50 pass through requirement in § 657 may have created a federal right in the mother. *Id.* The Court further opined that rather than waiting until after the lower court identified the applicable section, the Court would proceed to analyze whether Title IV–D has a remedial scheme sufficiently comprehensive so as to preclude suit under § 1983. *Id.* at 346, 117 S.Ct. 1353. The Court concluded that to the extent that Title IV–D may give rise to individual rights, it is not comprehensive enough to preclude § 1983 liability. *Id.* at 348, 117 S.Ct. 1353.

Fuller acknowledges the *Blessing* decision, but contends that it has been limited by *Gonzaga University v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). In *Gonzaga,* a student sued the university alleging a violation of the non-disclosure provision of the Family Educational Rights and Privacy Act of 1974. The Court held that the non-disclosure provisions did not give rise to a federal right enforceable under § 1983 because it did not speak in terms of the individual,

but only to the Secretary of Education. *Id.* at 2277. The Court, citing *Blessing,* explained that this focus was two steps removed from the individual students and parents and did not confer the sort of individual entitlement that is enforceable under § 1983. *Id.* The Court also stated that because the provisions speak in terms only of institutional policy and practice and not individual instances of disclosure, and because the institutions could avoid termination of funding as long as they substantially complied with the Act's requirements, it failed to establish an enforceable right. *Id.* The Court emphasized that none of its previous cases permit anything short of an unambiguously conferred right to support a claim under § 1983. ·*Id.* at 2268.

Fuller relies on legislative history for the changes to § 657 and argues that the purpose of the changes was to ensure that parents repaid money owed to taxpayers, rather than to create a right in those individuals, and, therefore, no enforceable right exists under the *Gonzaga* analysis. A portion of the legislative history cited by Fuller, however, couches this goal in terms of obtaining funds from non-custodial parents. It states that the child support program was established to ensure that "parents, especially parents who did not live with their children, repaid taxpayers for supporting these children." H.R.Rep. No. 104–651, 1387 (1996). The same report goes on to state "because millions of families are at risk of needing public welfare unless noncustodial parents provide child support, and because additional millions of families are not receiving the financial support that is their legal right from noncustodial parents, States must provide child support services to nonwelfare families that request such services." *Id.* Also cited by Fuller for the proposition that the aid to families first change to the statute was intended to benefit the public and not the families is a statement which describes the change as providing "a new source of income for mothers trying to work to support their children without relying on public aid." *Id.* at 1399.

■■ These statements do not undermine an interpretation that the statutory language setting forth the requirement that families no longer receiving public assistance be paid first before amounts due are paid to the government, which affected a change in the order in which disbursements were made which benefits custodial parents, was intended to create a right in those families, even if it also was intended to create a protection for the public. Merely because child support provisions benefit taxpayers as a whole does not mean that individuals are not intended beneficiaries where the effects of the program are "ultimately personal." *Maynard,* 72 F.3d at 852. Further, as the Plaintiffs point out, a statute can have more than one intended beneficiary. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 109, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989).

Fuller points to the Eleventh Circuit's decision in *Maynard* and argues that it establishes that the intended beneficiary of Title IV–D is the public, not the individual, so a "right" under *Gonzaga* is not present. In *Maynard,* the court cited a description of Title IV–D as discussed in *Wehunt* and stated that "[b]eyond the first fifty dollars of child support collected each month .. the funds recovered through the workings of [Title IV–D] accrue directly to the state government." *Maynard,* 72 F.3d at 853. In other words, while acknowledging that the $ 50 pass through provision was an exception, the court concluded that Title IV–D as a whole did not confer enforceable rights. Although *Wehunt,* according to the characterization in *Maynard,* rejected that Title IV–D as a whole was enacted for the special benefit of families, *see May-*

nard, 72 F.3d at 853 (citing *Wehunt*, 875 F.2d at 1565), this broad-sweeping analysis was rejected by the Supreme Court in *Blessing* by the Court's determination, as previously discussed, that Title IV–D could not be looked at as an undifferentiated whole.

The provision identified by the Supreme Court in *Blessing* as arguably creating enforceable rights was the specific provision mentioned by the Eleventh Circuit; that is, the $50 pass through provision. The Court's language in *Blessing* was that the statutory provision "may give [the plaintiff] a federal right to receive a specified portion of the money collected on her behalf by [the state] ...." *Blessing*, 520 U.S. at 346, 117 S.Ct. 1353. Therefore, while the Eleventh Circuit did not place significance on the difference between the pass through provision and the rest of Title IV–D, it made its determination without the benefit of the *Blessing* decision, which not only mandates that each provision be looked to separately in determining whether there is an enforceable right under § 1983, but specifically identified the pass-through provision as being one which potentially creates a right to receive a specified portion of money.

In this case, although the language of § 657 has changed, the *Blessing* rationale is still applicable. As earlier stated, the pass through provision identified by the *Blessing* Court as potentially creating rights was said to potentially create an enforceable right because it identified a right to receive a specified portion of the money collected on a plaintiff's behalf by the state. The provisions under which the Plaintiffs in this case seek an injunction also direct the State to pay a specified portion of the money collected on behalf of the family to the family because the provisions in question direct that any income tax refunds intercepted be paid to the families first to pay whatever child support

may be due, and then may be used to offset amounts owed to the government.

Further, the provisions relied on by the Plaintiffs are directed to the State, not the Secretary of the Department of Health and Human Resources. They are not a statement about institutional policies or practices, but are instead a mandatory statement that the State "shall" distribute money to the family. The provisions are, therefore, distinct from those in *Gonzaga*.

In addition to his arguments based on legislative history and federal case law, Fuller has also cited this court to a state court decision from Tennessee in which the court addressed the question of enforceable rights under several statutory sections contained within Title IV–D, although not § 657. *Davis v. O'Hara*, 40 S.W.3d 24 (Tenn.App.2000). In *Davis*, the court found that none of the provisions under which the plaintiffs had brought suit created enforceable rights. *Id.* at 36. The court concluded this, even though it had earlier concluded in the same litigation, and had been affirmed by the Tennessee Supreme Court, that the plaintiffs had enforceable rights to receive Title IV–D benefits. *Id.* at 26. In determining that there were no enforceable rights, the court reasoned that some of the statutory sections did not impose obligations on the state, but rather set forth responsibilities of the Secretary of the Department of Health and Human Services. *Id.* The court noted that other provisions presented closer questions, but because Title IV–D as a whole only requires substantial compliance, it did not create enforceable rights. *Id.* at 38. The court noted, however, that in *Blessing*, the Court rejected an argument that the substantial compliance requirements themselves created enforceable rights. *Id.*

This court must agree with the Plaintiffs in this case that the *Davis* court's determination that no Title IV–D provision can

create enforceable rights because Title IV–D contains substantial compliance provisions, even if those are not the provisions sought to be enforced, is at odds with the analysis in *Blessing.* Further, even the *Davis* court acknowledged that the United States Supreme Court in *Blessing* arguably recognized § 657 as it was written at that time as conferring enforceable rights. *Id.* at 41. As one court has reasoned, if the *Blessing* court determined that no provision under Title IV–D created enforceable rights because of the substantial compliance provisions, it would not have remanded the case for further determination. *See LaFine v. County of Cook, Illinois,* No. 98–C–195, 2001 WL 619511 (N.D.Ill. May 29, 2001). In fact, at least one federal district court has determined that enforceable rights are created by various provisions of Title IV–D. *See id.*

The language of § 657 provides a mandate to the State that it apply income tax refunds which are received by the State as support collections first to the families which are due past support. This language is directed to the State and identifies the recipient of funds collected as the "family." It appears, therefore, that Congress intended that the provision in question benefit the plaintiffs. *Blessing,* 520 U.S. at 340, 117 S.Ct. 1353. The mandatory language that families be paid first is not so vague and amorphous that its enforcement would strain judicial competence, as it is not like the substantial compliance and adequate staffing provisions addressed in *Blessing. See LaFine,* 2001 WL 619511 at *7. Finally, the statute unambiguously imposes a binding obligation on the states in accordance with *Blessing.*

In addition to the fact that the three requirements of the *Blessing* analysis are met, as earlier discussed, the *Blessing* court rejected the contention that Congress foreclosed a § 1983 remedy for viola-

tion of Title IV–D. *See also LaFine,* 2001 WL 619511 at *8. Therefore, the court must conclude that the Plaintiffs have an enforceable right under § 657 and, therefore, there is a substantial likelihood that the Plaintiffs can prevail on the merits of a claim asserted under § 1983 for violation of § 657.

### 4. Sovereign Immunity

■ Fuller argues that there is no substantial likelihood of success on the merits because sovereign immunity bars the requested relief. Fuller recognizes that there is a limited exception to sovereign immunity where there is a suit against a state official to enjoin an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Fuller argues, however, that spending clause legislation is different from laws passed pursuant to other sources of congressional power, because no unilateral conditions are imposed on the states. Fuller cites to *Westside Mothers v. Haveman,* 133 F.Supp.2d 549, 587 (E.D.Mich. 2001), for the proposition that where the federal government cannot compel the state to participate in a federal program, the federal program is not supreme federal law.

As the Plaintiffs point out, the *Westside Mothers* decision relied upon by Fuller was reversed on this point by the Sixth Circuit. *See Westside Mothers v. Haveman,* 289 F.3d 852 (6th Cir.2002). The Sixth Circuit concluded that the plaintiffs could proceed under *Ex parte Young* as spending clause enactments are the supreme law of the land and because the plaintiffs sought to prevent the defendants from doing what they had no legal right to do. *Id.* at 861. At least three circuit courts of appeals, in addition to the Sixth Circuit, have rejected the reasoning of the district court in *Westside Mothers. See Frazar v. Gilbert,* 300 F.3d 530, 550 (5th

Cir.2002)("We have not recognized a 'Spending Clause exception to the *Ex Parte Young* exception' to the Eleventh Amendment."); *Missouri Child Care Ass'n v. Cross,* 294 F.3d 1034, 1040 (8th Cir.2002); *Antrican v. Odom,* 290 F.3d 178, 190 (4th Cir.2002). Accordingly, the court declines to adopt the analysis relied on by Fuller and concludes that Fuller has failed to demonstrate that the Plaintiffs' requested relief is barred by sovereign immunity.

#### 5. Claims Against Fuller in His Official Capacity

Fuller argues that as he in his official capacity is not a person under § 1983, no claim can be asserted against him. In support of this argument, Fuller again relies on the *Westside Mothers* district court decision discussed above. This aspect of the district court's *Westside Mothers* opinion was also reversed by the Sixth Circuit. *See Westside Mothers,* 289 F.3d at 863. Accordingly, the court concludes that this argument by Fuller is unavailing and that a claim can be brought under § 1983 against Fuller in his official capacity for prospective injunctive relief.

#### 6. Regulations Cannot Confer Enforceable Rights

The court need not reach Fuller's argument that regulations cannot confer enforceable rights because, although regulations were cited by the Plaintiffs in explaining the operation of statutory provisions, the language of the statute itself was relied upon as the source of the enforceable rights.

### IV. *CONCLUSION*

Although the court has concluded that Fuller's arguments as to why preliminary injunctive relief is not appropriate are unavailing, the court is not satisfied that the scope of the preliminary injunction sought is appropriate at this time. Although Full-er has vehemently opposed the motion for class certification which has been filed in this case, he has not addressed in his opposition to the preliminary injunction the effect of any injunction which this court might order as a preliminary remedy in the absence of the certification of the class.

Rather than penalize those named plaintiffs who are entitled to injunctive relief by delaying an injunction while this court considers the motion for class certification, it appears to the court to be the better course to order that any income tax rebates which would be disbursed under § 657 to the named Plaintiffs be held by Fuller until such time as he has the appropriate software in place. As earlier stated, it appears to the court that the named Plaintiffs to whom this would apply are Tanya Jackson, Carmelitess Felder, Sharon L. Scott, and Lakisha Woodall.

If the Department does not in fact have its software in place on December 1, 2002, then the court will consider certification of a conditional class for purposes of extending the injunction.

Accordingly, it is hereby ORDERED as follows:

1. The Plaintiffs' Request for Rulings on Pending Motions (Doc. # 107) is GRANTED to the extent that the court rules on the Motion for Preliminary Injunction (Doc. # 74) and is DENIED in all other respects.

2. The Motion for Preliminary Injunction (Doc. # 74) is GRANTED to the following extent:

a. Defendant Fuller is enjoined from distributing any state income tax refunds received after the date of this Order to which Tanya Jackson, Carmelitess Felder, Sharon L. Scott, and Lakisha Woodall are entitled as child support, and is to hold those refunds in trust in a separate ac-

count until the date that the Department of Human Resources can properly distribute funds in accordance with 42 U.S.C. § 657.

b. Any remaining request for relief by the named Plaintiffs, specifically relief in the form of notice requirements, is held in abeyance until a later date.

3. Defendant Fuller is DIRECTED to file with the court on or before December 2, 2002 an affidavit establishing that the relevant software for distributing collected tax rebates in accordance with 42 U.S.C. § 657 is in place.

4. If the relevant software for distributing collected tax rebates in accordance with 42 U.S.C. § 657 is not in place on December 1, 2002, then Defendant Fuller is DIRECTED to show cause on December 2, 2002 why the court should not conditionally certify for purposes of preliminary injunctive relief a class of persons to whom collected tax rebates should be distributed.