Darcy LAGOY, Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES; Richard H. Miles; Sterling Price; Gloria Cooper; John Doe; and Jane Doe, Defendants.

No. 1:02CV1439(GLS/DRH).

United States District Court,
N.D. New York.

Feb. 8, 2005.

59

Office of Elmer R. Keach, III, Albany, NY (Elmer R. Keach, III, of counsel), for plaintiff.

McNamee, Lochner Law Firm, Albany, NY (Glen P. Doherty), Baker, Daniels Law Firm, Fort Wayne, IN (Michael S. Burns, Robert D. Moreland, of Counsel), for defendants.

### DECISION AND ORDER

SHARPE, District Judge.

### I. Introduction

Plaintiff Darcy LaGoy brings this suit under 28 U.S.C. §§ 1331 and 1343.[1] She asserts claims under 42 U.S.C. §§ 1983 and 1981,[2] alleging that Correctional Medical Services (CMS) and the individual defendants (collectively the "CMS defendants") acted under color of state law to violate her constitutional rights under the First and Fourteenth Amendments. Invoking the court's supplemental jurisdiction under 28 U.S.C. § 1367, LaGoy also asserts state law claims for defamation and intentional and/or negligent infliction of emotional distress. She seeks declaratory and injunctive relief,[3] compensatory and

---

1. LaGoy's jurisdictional statement also refers to 28 U.S.C. § 1341, which is inapplicable to her claims.

2. Without determining the adequacy of her recitation, the court notes that section 1981 prohibits intentional racial discrimination, and LaGoy has asserted no facts in support of

her claim. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

3. LaGoy's requests for declaratory and injunctive relief are asserted as separate causes of action.

punitive damages, and attorney's fees and costs.

The CMS defendants have moved to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that LaGoy's claims are preempted by sections 7 and 8 of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 157, 158, and are subject to the National Labor Relations Board's (NLRB) primary jurisdiction. For the following reasons, the CMS defendants' motion to dismiss is denied.

## II. *Procedural Background*

LaGoy commenced this action on November 14, 2002. *Dkt. No. 1.* The present motion was filed on February 24, 2003. *Dkt. No. 11–16.* The case was reassigned to this court on February 17, 2004, *Dkt. No. 18,* and the motion was taken on submit on February 3, 2005.

## III. *Facts* [4]

LaGoy was employed as a nurse for CMS, a Missouri corporation that provides medical services at the Albany County Correctional Facility (ACCF). These services are rendered pursuant to a contract with the City of Albany. *Complaint ¶¶ 5, 12,*[5] *16, Dkt. No. 1.* CMS has allowed only two union organizations in its nearly three hundred facilities nationwide. *Id. ¶ 14.* Moreover, CMS's written policies provide that all CMS facilities should be "union free," and require employees to attend "union free workplace" seminars where the company actively discourages association with labor unions. *Id. ¶ 13.*

Dissatisfied with poor working conditions at CMS, LaGoy and several other employees began to organize a local chapter of the Civil Service Employees Association (CSEA). *Id. ¶ 15.* On September 12, 2002, CSEA held a rally at ACCF seeking union membership for CMS employees. *Id. ¶ 16.* LaGoy participated in this rally along with other CMS employees and CSEA members. *Id. ¶ 17.* The following day, LaGoy and her coworkers received a letter from CMS and Cooper maintaining that the rally violated the notice provisions of the NLRA by failing to provide the requisite ten-days' notice before picketing a "health care site." *Id. ¶ 18.* CMS then filed a charge of unfair labor practices with the NLRB, claiming that CSEA had violated section 8(g) of the NLRA, and requested injunctive relief. *Id.; Burns Aff., Ex. A, Dkt. No. 12.* The NLRB issued a complaint [6] against CSEA. *Compl. ¶ 19; Burns Aff., Ex. B.*

According to LaGoy, CMS claimed it would "take no actions [relative to your employment] other than as authorized by the NLRB." *Compl. ¶ 18.* She also asserts that the NLRB complaint "did not imply, much less require, the termination of any CMS employee for participating in the supposedly illegal rally." *Id. ¶ 20.* She contends that the NLRA, even if it applied to her case, only allows employers to terminate employees for participation in unauthorized strikes or work stoppages, and not illegal pickets. *Id.*

Based on the NLRB's preliminary findings, CMS claimed it was authorized to terminate LaGoy. *Id. ¶ 21.* In a letter from Price, CMS claimed that its investi-

---

4. The factual background is taken from LaGoy's complaint. Under the standard of review applicable to Rule 12(b)(1) motions (*infra* part IV–A), limited reference is made to the exhibits in the moving affidavit of Michael Burns (Burns Aff.), counsel for the CMS defendants. *Dkt. No. 12.*

5. Paragraph 12 refers to a contract for the Rensselaer County Jail, which appears to be a typographical error.

6. The NLRB complaint asserts that CMS is an employer engaged in interstate commerce and a health care institution for purposes of the NLRA. *See Burns Aff., Ex. B, pp. 1,2.*

gation had confirmed that LaGoy[7] had "participated in picket activity . . . by carrying [signs] and/or walking the picket line showing support for the illegal picket." *Id.* On September 30, 2002, CMS terminated LaGoy without a hearing, based on her "participati[on] in an illegal picket." *Id.* ¶¶ *5, 21–22.* LaGoy also claims that the decision to terminate her was made collectively by the individual defendants, including Miles. *Id.* ¶ *23.*

Following her termination, CMS allegedly made public defamatory statements to media outlets, claiming LaGoy was terminated for participating in "illegal activity." *Id.* ¶ *22.* LaGoy alleges that the media focus on her, combined with the loss of her job and employee benefits, has caused her severe emotional distress and humiliation. *Id.* ¶ *24.* She further alleges that her job opportunities have diminished. *Id.* ¶ *25.*[8]

LaGoy's first three counts assert violations of her civil rights under 42 U.S.C. § 1983. The first count alleges that the CMS defendants, while acting under color of state law, violated a number of her First Amendment rights as a government employee. *Id.* ¶¶ *28–35.* In her second count, LaGoy alleges that the CMS defendants (again acting under color of state law) violated her Fourteenth Amendment due process rights by depriving her of property and liberty interests as a government employee. *Id.* ¶¶ *37–44.* The third count alleges that CMS, Miles, and unknown defendants violated LaGoy's First and Fourteenth Amendment rights based on unconstitutional policies and on their failure to properly train/supervise. *Id.* ¶¶ *46–51.* LaGoy's fourth and fifth counts assert individual and vicarious claims for infliction of emotional distress and defamation. *Id.* ¶¶ *53–62.*

## IV. *Discussion*

### A. Rule 12(b)(1) Motion to Dismiss

 Dismissal under Rule 12(b)(1) is proper where the court is without statutory or constitutional authority to decide a case. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The court must accept as true the material factual allegations in the complaint, *see Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), and may consider evidence outside the pleadings for the limited purpose of addressing the Rule 12(b)(1) motion to dismiss. *Makarova,* 201 F.3d at 113 (citation omitted). The plaintiff has the burden of proving the court's jurisdiction by a preponderance of the evidence. *See id.* (citation omitted).

### B. Analysis

Here, the issue is whether the NLRA preempts the court's jurisdiction over LaGoy's section 1983 and state law claims. The parties' positions are irreconcilable. The CMS defendants argue that LaGoy's claims are preempted because they are based on conduct governed by the NLRA, and therefore within the primary jurisdiction of the NLRB. LaGoy contends that her claims have nothing to do with the NLRA, and should instead be analyzed as state action infringing on her constitutional

---

**7.** Throughout her complaint, LaGoy makes references to the involvement of her co-workers. She also makes allegations suggesting violations of those individuals' rights. At one point, she even refers to them as "Plaintiffs." However, LaGoy may not buttress her own claims with alleged violations of the rights of third parties. She has no standing to do so, because she "must assert h[er] own legal rights and interests, and cannot rest h[er] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted).

**8.** She was, however, re-hired by CMS, albeit without back pay. *See Compl.* ¶ *68.*

rights as a public employee. At this stage of the case, the court must agree with LaGoy.

### 1. Preliminary Concerns

■ The CMS defendants have failed to address a crucial element of LaGoy's complaint: the allegation that they violated her rights as a *government employee*.[9] It is well established that neither public employers, nor public employees, are covered by the NLRA. 29 U.S.C. § 152(2); *see, e.g., Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1342 (11th Cir.1999); *Jackson v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 721 F.2d 931, 933 (3d Cir.1983). Thus, whether the NLRA is even applicable to this case is a question that must be resolved before the court can turn to the merits of the defendants' arguments. As this issue has not been addressed by the CMS defendants, their motion to dismiss must be denied at this stage.

### 2. NLRA Preemption

The above concerns notwithstanding, the court must reject the CMS defendants'

preemption arguments. As already noted, CMS's chief contention is that the NLRB has primary jurisdiction over LaGoy's claims, as they are based on conduct controlled by the NLRA. While the court may be inclined to agree in part with this argument, the defendants have failed to address LaGoy's fundamental allegation: that they acted under color of state law in violating her constitutional rights.

### (a) Section 1983 Claims

■ To the extent LaGoy asserts violations of her constitutional rights under section 1983, the question whether such claims are preempted by the NLRA is governed by the standard[10] enunciated by the Supreme Court in *Golden State Transit Corporation v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (*"Golden State II"*). *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 780 n. 6 (9th Cir.), *cert. denied*, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001).

■ Section 1983 provides remedies for violations of federal statutory and con-

---

9. LaGoy's potential status as a public employee leads to a reasonable inference that CMS was a government or public employer. The court notes that while LaGoy has alleged CMS to be a Missouri corporation, she nonetheless contends that it acted under color of state law by " 'exercis[ing] powers which are traditionally exclusively reserved to the state.' " *LaGoy's Brief in Opposition, p. 2, Dkt. No. 15* (quoting *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996) (citations omitted)). The court is also aware that the NLRB has asserted jurisdiction over CMS's and the CSEA's cross-charges. However, the CMS defendants have neither offered any argument contesting LaGoy's rationale, nor have they raised this issue for the court's consideration. While the court may have some doubts about the factual accuracy of LaGoy's allegations in light of the exercise of jurisdiction by the NLRB, it cannot at this stage give dispositive effect to the latter.

10. The CMS defendants submit that the standard applicable here is the one enunciated in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Under *Garmon*, when conduct is arguably subject to section 7 or section 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245, 79 S.Ct. 773. The *Garmon* doctrine, however, only applies to NLRA preemption of state, not federal, law. *See, e.g., United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 948 F.2d 98, 105 (2d Cir.), *vacated on other grounds sub nom. Yellow Freight Sys., Inc. v. United States*, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) (citing Supreme Court and Second Circuit cases).

stitutional rights by persons acting under color of state law. 42 U.S.C. § 1983. Therefore, "the [remedial] coverage of th[is] statute must be broadly construed." *Golden State II,* 493 U.S. at 105, 110 S.Ct. 444 (citations omitted). Additionally, section 1983 "provides a remedy 'against all forms of official violation of federally protected rights.' " *Id.* at 106, 110 S.Ct. 444 (quoting *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 700–701, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Under *Golden State II,* the court must apply a two-part test to determine the validity of a section 1983 claim: (1) if a plaintiff asserts the deprivation of a federal constitutional or statutory right, a 1983 claim is presumed to exist unless (2) the defendant satisfies its burden of showing that "Congress specifically foreclosed a remedy under § 1983 ... by providing a comprehensive enforcement mechanism for protection of a federal right." *Id.* (internal citations, quotation marks and alteration omitted).

█ In this case, LaGoy alleges that the CMS defendants acted under color of state law and violated her First and Fourteenth Amendment rights. This contention is unchallenged by the defendants. Therefore, the only open question is whether the defendants can show that the NLRA provides a comprehensive enforcement mechanism for these rights.

In *Hobbs v. Hawkins,* 968 F.2d 471 (5th Cir.1992), employees and their union brought suit under section 1983 for violations of their rights under the NLRA and the First Amendment. *Id.* at 473. Applying the *Golden State II* test, the Fifth Circuit held that the plaintiffs could not sustain a section 1983 action based on violations of their rights under the NLRA because Congress had provided a comprehensive enforcement mechanism for these rights in the statute. *Id.* at 475–79. However, with respect to the plaintiffs' First Amendment claims, the Circuit stated: "The district court concluded that the constitutional injuries ... were not 'separate and distinct from the type of injury protected by the NLRA' and thus were within the [NLRB]'s exclusive jurisdiction ... Whether or not the NLRB entertains constitutional claims, such claims would not fall within [its] primary jurisdiction. Thus, the district court had jurisdiction to consider plaintiffs' constitutional claims." *Hobbs,* 968 F.2d at 479–80 (internal quotation marks, citation omitted). The *Hobbs* holding was based on *Communications Workers of America v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), where the Supreme Court noted that constitutional claims were not within the NLRB's primary jurisdiction, and therefore subject to district court jurisdiction. *Beck,* 487 U.S. at 744 n. 1, 108 S.Ct. 2641 (collecting cases).[11] Adopting the same rationale, the Ninth Circuit stated that "[t]he NLRA does not provide, of course, a comprehensive scheme for the vindication of constitutional rights. There is accordingly no preemption of the plaintiff['s] § 1983 constitutional claims...." *Radcliffe,* 254 F.3d at 781 (citations omitted).[12]

Based on the above, and in light of the CMS defendants' uncontested status as state actors, LaGoy's section 1983 constitutional claims are not preempted by the

---

**11.** This court may have reached a different result in interpreting the implications of the *Beck* footnote, in light of the specific grounds for the Supreme Court's observation and the history of that case. However, it defers to the interpretation and meaning assigned to it by the Fifth and Ninth Circuits.

**12.** *Radcliffe* involved Fourth Amendment claims based on false arrest and malicious prosecution. *See* 254 F.3d at 781.

NLRA and the court has jurisdiction over them. Therefore, the motion to dismiss must be denied.

#### (b) State Law Claims

■ The CMS defendants' argument that LaGoy's emotional distress and defamation claims are preempted by the NLRA is without merit. The Supreme Court has held that these claims, even where they involve conduct arguably protected or prohibited under the NLRA, may be excepted from *Garmon* preemption under certain circumstances. *Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress); *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (defamation).[13] Accordingly, the motion to dismiss LaGoy's state law claims must also be denied.

**WHEREFORE**, it is hereby

**ORDERED** that defendants' motion to dismiss is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

---

**13.** Although the CMS defendants concede that *Linn* precludes their position, they attempt to attack, in footnote form, the pleading insufficiency of LaGoy's defamation claim. They are not moving, however, for dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), and the court declines to consider their argument as unsupported. Similarly, the court rejects their argument, again made in a footnote to their reply brief, that LaGoy has conceded preclusion of her state law claims by failing to address the issue in her opposition.